## COCHRAN et al. v. CAVANAUGH et ux.
### (No. 8995.)

(Court of Civil Appeals of Texas. Dallas.
April 21, 1923. Rehearing Denied
May 26, 1923.)

1. **States ⊚⇒191(2)—Suit to restrain state officers from acting under invalid statute may be maintained without legislative permission.**

A suit may be maintained without legislative permission to 'restrain official representatives of a state from performing duties and functions prescribed by an invalid legislative enactment.

2. **Injunction ⊚⇒75—State officers cannot be restrained from performing duties under valid statute.**

The official representatives of the state cannot be restrained from the performance of a duty placed upon them by a valid statutory enactment.

3. **Constitutional law ⊚⇒280—Act for condemnation of land for University held not void as taking land without due process of law.**

Acts 37th Leg. c. 137, passed April 1, 1921, authorizing the Governor to appoint a commission to purchase or condemn additional lands adjacent to the State University and adopting the procedure in condemnation used by railroads to acquire a right of way as prescribed by Rev. St. arts. 6506 to 6528, *held* not unconstitutional as taking land without due process of law.

4. **Constitutional law ⊚⇒227—Statute providing for condemnation of property for University held not to deny equal protection of law.**

Acts 37th Leg. c. 137, passed April 1, 1921, authorizing the Governor to appoint a commission for purchase or condemnation of lands adjacent to University property, *held* not unconstitutional as depriving the owners of lands sought to be condemned of the equal protection of the law; the act being applicable alike to all persons similarly situated.

5. **Eminent domain ⊚⇒67—Courts will not review legislative declaration that necessity for acquisition of land for state purposes exists.**

Where the Legislature passes an act providing for the purchase or condemnation of property for the benefit of the State University, and declares that a necessity exists for the acquisition of such land, the courts cannot review the act in such respect.

6. **Eminent domain ⊚⇒53—Act for condemnation of property for University purposes not invalid, because more land than was necessary would be acquired.**

Acts 37th Leg. c. 137, passed April 1, 1921, authorizing the Governor to appoint a commission to purchase or condemn lands adjacent to the State University for its benefit, is not rendered invalid because the Legislature made provision for the future growth and development of the University and authorized the acquisition of more land than would satisfy its immediate wants.

7. **Eminent domain ⊚⇒13—Act providing for acquisition and renting of University lands not a taking of property for private use.**

Acts 37th Leg. c. 137, passed April 1, 1921, authorizing the Governor to appoint a commission to purchase or condemn lands adjacent to the State University for University purposes was not invalid as providing for taking of property for private use because it authorized the board of regents of the University, by short period rental contracts, to realize a revenue on the land not put to immediate use; the act making it mandatory that the revenue realized from such rentals should become part of the building fund of the University.

8. **Eminent domain ⊚⇒53—Act for acquisition of University lands not rendered invalid by illegal actions of commission acting thereunder.**

Acts 37th Leg. c. 137, passed April 1, 1921, authorizing the Governor to appoint a commission for the acquisition of lands for University purposes was not rendered invalid because the commission had announced its policy not to purchase all the lands included in the act; the commission not being allowed a discretion in such respect.

9. **Eminent domain ⊚⇒71 — Act authorizing condemnation of lands for University purposes not invalid because of interest of citizens signing guaranty bond.**

Acts 37th Leg. c. 137, passed April 1, 1921, authorizing the Governor to appoint a commission to acquire lands for University purposes and requiring a bond from certain citizens guaranteeing that the land could be acquired at an amount not exceeding the sum appropriated, was not rendered invalid because the citizens who had signed the guaranty bond thereby became interested in reducing the value of the lands sought to be taken by condemnation so as to render the owners thereof unable to secure adequate compensation, since, if such were the fact, a change of venue might be taken under Rev. St. arts. 1911 to 1916.

10. **Eminent domain ⊚⇒274(1)—Condemnation proceedings will not be restrained on the ground of a deficiency in the funds from which payment is to be made.**

An injunction will not lie to restrain action under Acts 37th Leg. c. 137, passed April 1, 1921, authorizing the Governor to appoint a commission to acquire lands for University purposes by condemnation or purchase, on the ground of a known deficiency in the state treasury, since Rev. St. art. 6530, provides that no condemned property shall be taken except there is first paid the amount of the damages and costs, and since a court of equity cannot assume that the mandatory provisions of such statute will not be carried out.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by James Cavanaugh and wife against Sam P. Cochran and others, for an injunction. A temporary injunction was issued, and defendants appeal. Reversed, and temporary writ dissolved.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. A. Keeling, Atty. Gen., and L. C. Sutton and Frank M. Kemp, Asst. Attys. Gen., for appellants.

Etheridge, McCormick & Bromborg and Paul Carrington, all of Dallas, for appellees.

JONES, C. J. Appellees James Cavanaugh and Mary Cavanaugh, husband and wife, who reside in Travis county, Tex., brought this suit in the district court of Dallas county, Tex., against the members of the board of regents of the University of Texas, the members of the University land acquisition board, the county judge of Travis county, Tex., and the Attorney General of the state of Texas, asking for a temporary injunction restraining appellants in their official capacities, during the pendency of said suit, from filing or causing to be filed, or directing the filing, of proceedings in condemnation against appellees' property located in the city of Austin, Travis county, Tex., and fully described in the petition for injunction; also enjoining the Attorney General from filing and prosecuting such proceedings, and the county judge of Travis county from appointing commissioners of condemnation in such proceedings. On presentation of the petition, the judge of said court granted the injunction as prayed for, conditioned that appellees file a bond in the sum of $10,000. On December 9, 1922, the date on which said petition was filed, the bond was duly approved by the clerk of the court, and the writ prayed for was duly issued against each of the appellants.

Appellants, on December 29, 1922, gave notice of appeal from the order granting the temporary injunction and bring this matter to this court for review and revision. The case is before this court solely on the allegations contained in appellees' petition, and on this hearing the facts alleged in the petition must be taken as true.

The petition for injunction attacks the constitutionality of an act of the Thirty-Seventh Legislature, being chapter 137 of the General Laws of the State of Texas, passed at the regular session of said Legislature and approved on April 1, 1921. By said act the Governor of the state of Texas is authorized to appoint a committee to purchase certain described land lying adjacent to the State University at Austin in Travis county for the extension of the University grounds. The caption of the bill states its purpose, and is as follows:

"An act authorizing the Governor of Texas to appoint a commission composed of three citizens of the state of Texas, to purchase additional lands adjacent to the University property, in the city of Austin, for the use and benefit of the University of Texas; prescribing the duties of such commission and describing the land to be purchased by the commission; authorizing condemnation proceedings in event the land desired cannot be acquired at reasonable price without such condemnation; making appropriation for the purchase of the same and directing how and when the same shall be paid for and requiring a bond from certain citizens of Austin guaranteeing that the land can be acquired at an amount not exceeding the sum herein appropriated, and declaring an emergency."

One million three hundred and fifty thousand dollars was appropriated by the act to purchase the land described therein; said lands being located adjacent to the property now owned and occupied by the State University. Before, however, this appropriation could be used by the commission in the purchase of this land, a solvent guaranty bond must be executed by the chamber of commerce or citizens of Austin guaranteeing to said commission that the land described in the act can be secured with the proceeds of the appropriation made. The commission of three citizens of Texas, authorized by the act to be appointed by the Governor, is given the official designation of the "University land acquisition board." For convenience it will be styled in this opinion the "acquisition board."

The acquisition board named by the Governor perfected its organization and has begun to carry out the purposes of the act. It is clothed with full power to purchase all the various tracts of land from the respective owners lying within the described district. This purchase can be made either with or without the improvements now on the land. It is also clothed with full power to condemn any parcel of land for which the purchase cannot be consummated between the acquisition board and the owners. The guaranty bond was duly executed, being signed by approximately 1,600 citizens of the city of Austin, and its solvency approved as required by the act.

The acquisition board is authorized and empowered to institute condemnation proceedings, in the name of the state of Texas for the use of the University of Texas, for any parcel of land within the described district that it is unable to acquire from the owner by purchase. The University board of regents is also given the power of eminent domain for the purpose of acquiring this land. Upon a failure in this respect it is made the duty of said acquisition board to institute the said condemnation proceedings. This power of eminent domain is to be exercised in the same manner as the law provides for the exercise of such power by railroad companies in acquiring rights of way. The procedure prescribed in respect to the exercise of the power of eminent domain by railroad companies is specifically designated as the procedure to be used by

these boards in the exercise of this power in respect to this land.

The petition alleges that appellees refused to sell their land to the acquisition board, refused to agree upon a price for the value of same with said board, and that unless prevented by the restraining power of the court, the condemnation proceedings authorized in said act will be begun against appellees and their land taken through such means. The petition attacks the constitutionality of the act in question on various grounds, not necessary now to enumerate, but which will appear from this opinion.

[1, 2] From appellees' standpoint this suit is an action to restrain certain official representatives of the state from performing certain duties and functions prescribed by an invalid legislative enactment. It follows that appellees have the right to maintain this ' suit without legislative permission. Philadelphia Co. v. Stimson, Secretary of War, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570, and authorities there cited. Whether appellees are entitled to the relief they secured by the judgment of the lower court rests solely upon the validity of said act. If it is valid, then it necessarily follows that the temporary injunction was wrongfully granted, for the official representatives of the state cannot be restrained from the performance of a duty placed upon them by a valid statutory enactment.

[3, 4] We cannot agree with appellees on any of the theories upon which they challenge the constitutionality of this act. It does not take appellees' land without due process of law, nor does it deprive appellees of the equal protection of the law, as contended by appellees. The act adopts as a mode of procedure, in acquiring the land under the power of eminent domain the existing law governing the exercise of such power in condemnation of land to be used as a right of way for railroads. The procedure, in brief, provides for the filing of a statement or petition in a court of competent jurisdiction; of the appointment and qualification of commissioners; of the setting of a day for hearing; the issuance and service of' adequate notice of the hearing, and of the right of a trial by jury and appeal through the courts. Revised Statutes, arts. 6506 to 6528, inclusive. This meets the requirements of the due process of law provisions. This is made applicable alike to all persons similarly situated to appellees, and thereby guarantees them the equal protection of the law.

[5, 6] The State University is a public institution authorized by the Constitution of the state of Texas and supported by legislative appropriations from year to year. It is necessary for its future growth and prosperity that it have ample grounds upon which

there can be erected buildings for its various activities. Whether or not there was sufficient land before this enactment for this purpose was a matter resting solely with the Legislature. By this act the Legislature declared that a necessity existed for the acquisition of this additional land, and the courts cannot review a legislative act in this respect. It is true that the act shows that the Legislature realized that all of this property could not at once be used for the purpose for which it was taken. The Legislature is not required to act only for the present; it has the power to determine the future needs of the University with reference to land, and to provide in the present for that which it believes to be a future necessity. It therefore did not invalidate the law because the Legislature apparently made provision for the future growth and development of the University and authorized the acquisition of more land than will satisfy its immediate want in this respect.

[7] The mere fact that the act contemplates that more land is to be acquired than can be put to immediate use, in that it authorizes the board of regents, by short period rental contracts, to realize a revenue on the land not put to immediate use, does not constitute a taking of property for private use. The sole purpose for which the land is condemned is the public purpose of meeting the needs of the State University for the enlargement of its grounds. The property is dedicated to this use. The mere fact that this use may not be made immediately and that, until it is put to such use, the act authorizes its lease to private parties for a private use in no way changes its status. The act makes it mandatory that the revenue realized by these rentals shall become a part of the building fund of the University.

[8] It is also urged that this act, if not invalid when passed by the Legislature, has since become invalid because the acquisition board has announced its policy not to purchase all the land included in said act, and thereby unjustly discriminates against appellees, whose land it insists on taking. If the acquisition board has declared such a policy, the same is illegal, for it is given no power other than that to acquire all the land in the described district either by purchase or by condemnation proceedings. It is not allowed a discretion in this respect, and if it should refuse to perform this duty it can be compelled to do so by a resort to mandamus proceedings. It would be very unusual, indeed, if a board, created by the Legislature and given high public duties to perform, could render invalid the law creating it and prescribing its duties because of a failure to perform all its duties.

[9] It is also urged that the act is invalid

by reason of the guaranty bond exacted from citizens of Austin; that 1,600 influential citizens have signed this bond and have thereby guaranteed any deficiency that might arise in the purchase of this land; that these citizens thereby became greatly interested in reducing the value of appellees' land in order that no deficit in the appropriation might be created; that by reason of this condition, thus created by the act itself, appellees will be unable to secure adequate compensation for the taking of their land. Whatever force there may be in this contention, it cannot operate to render the law invalid. It would find its proper sphere in a plea to the court of Travis county for a change of venue. Articles 1911 to 1916, inclusive, of our Revised Statutes were enacted to meet such conditions as appellees allege exist in Travis county in the instant case.

[10] It is further urged that the equity powers of the court were rightfully invoked to secure the injunction in behalf of appellees because of the known deficiency in the state treasury. It is urged that by reason of such deficiency, if appellees' land is permitted to be taken by the contemplated condemnation proceedings, there will be no money in the state treasury to pay them the damages assessed for the taking of their land. This contention is not sound. Article 6530 of the Revised Statutes, which must control in the instant case, provides, in substance, that no condemned property shall be taken except there is first paid the amount of the damages and costs awarded and adjudged against the petitioner, and that the property shall not be taken until the owner of the land has been paid the amount of the damages awarded by the commissioners, or until the petitioner has deposited said amount of money in court, subject to the order of the owner of the condemned land. A court of equity cannot assume that the mandatory provisions of this statute will not be carried out in the forum in which appellees' land is condemned. This article having been specifically adopted by reference as the procedure to be followed in condemning land under this act, the state is bound by its provisions and cannot take appellees' land until it has conformed to the above provisions of said article.

We therefore hold that the act in question is constitutional, and that appellees' land is subject to the condemnation proceedings authorized by said act, and it necessarily follows that the injunction was wrongfully issued, and the same is hereby dissolved.

Reversed, and temporary injunction dissolved.