**WENTZ et al. v. INGENTHRON et al.**

No. 20986. Opinion Filed Nov. 25, 1930.

Rehearing Denied Dec. 23, 1930.

J. Berry King, Atty. Gen., and W. C. Lewis, Asst. Atty. Gen., for plaintiffs in error.

Rittenhouse, Lee, Webster & Rittenhouse, and Clyde L. Andrews, for defendants in error.

SWINDALL, J. This action was originally instituted in the district court of Oklahoma county by Oliver Ingenthron et al., as plaintiffs, against Lew Wentz, C. M. Boswell, and L. C. Hutson, as members of and constituting the State Highway Commission of the state of Oklahoma, and Paul Prince, O. C. Lippert, and D. E. Mosier, as members of and constituting the board of county commissioners of Lincoln county, Okla.

The plaintiffs, in their petition filed July 29, 1929, prayed for an order of the court immediately restraining the defendants Lew Wentz et al., as members of the State Highway Commission of the state of Oklahoma, and the board of county commissioners of Lincoln county, Okla., from changing the location of a highway through the town of Davenport and community from the location of the same along the north side of the original town of Davenport and across Broadway street in said town, and from expending any money or entering into any contract for any change in the location of said highway outside the town of Davenport and community, and that upon final hearing of said cause said defendants be permanently enjoined from so doing, and for such other and further relief as plaintiffs may be entitled to in the premises.

On the same day, a temporary restraining order was issued by Honorable Thomas G. Chambers, district judge, in accordance with the prayer of plaintiffs' petition. The hearing on the question of the issuance of a temporary injunction in the case was by said order fixed as August 6, 1929. Thereafter, on August 9, 1929, the defendants Lew Wentz et al., as Highway Commissioners of the state of Oklahoma, filed their motion to dismiss, and thereafter, on September 3, 1929, the defendants, the board of county commissioners of Lincoln county, Okla., filed their demurrer to the petition of the plaintiffs. The motion to dismiss and the demurrer were both overruled and exceptions taken thereto. The case was from time to time by agreement continued until September 16, 1929, at which time testimony was introduced by both sides on the question of the issuance of a temporary injunction. On September 16, 1929, said cause was heard before Honorable Thomas G. Chambers, district judge, and on the same date the same was continued to September 30, 1929, for oral argument, and on said date continued by agreement from time to time until November 1, 1929. On said date the defendants filed their answer, and it was agreed that the court might consider the testimony introduced on the application for a temporary injunction, and that it might be considered as the evidence in the case on its merits, and on said date the court entered judgment granting a permanent injunction against the defendants, in which they were enjoined from constructing the cut-off north and west of the town of Davenport from any funds belonging to Lincoln county, Okla., and that the defendants be enjoined from constructing said cut-off until such time as they have constructed or let contracts for the construction of the proposed highway from Chandler east through the town of Davenport, and along the north side of the original town thereof, and through and across Broadway street in the said town of Davenport and north to intersect with the main highway running to the town of Stroud, but said defendants may advertise and let contracts for the construction of the cut-off, provided they at the same time advertise and let contracts for the construction of said highway as set forth in the proclamation and as voted by the people of Lincoln county, Okla.

On the 2nd day of November, 1929, the defendants filed their motion for a new trial, which was by the court overruled, and defendants in open court gave notice of intention to appeal, and within the time allowed by law filed in this court their petition in error, and now seek to reverse the action of the lower court in entering judgment for the plaintiffs and in overruling defendants' motion for new trial.

The parties will hereafter be referred to as they appear in the trial court.

The plaintiffs allege, in substance, that they are citizens of the town of Davenport in Lincoln county, Okla., and community similarly situated and are property owners and taxpayers in said town and community, and were at all times mentioned in the peti-

tion property owning taxpayers in and interested in said town and community. They allege that a resolution was duly passed authorizing the calling of an election in Lincoln county, Okla., and that road bonds in the sum of $1,200,000 were authorized and issued and that $900,000 of the funds derived from the sale of the bonds were delivered by the board of county commissioners of Lincoln county to the State Highway Commission of the state of Oklahoma, under the terms of a contract entered into between said board of county commissioners and the State Highway Commission of the state of Oklahoma, whereby in consideration of the board of county commissioners delivering said funds to the State Highway Commission to be used in the construction of the highways mentioned and designated in the resolution and notice authorizing the issuance of said bonds the State Highway Commission agreed to furnish all remaining funds necessary to complete the roads designated and specified in said resolution and notice, and that the funds constituted a trust fund in the hands of the State Highway Commission, and that in disregard of said agreement and of the purpose for which said bonds were voted, the State Highway Commission is attempting to change a portion of the highway and that the threatened change of the location of the said highway is in direct violation of said proclamation, agreements, and promises upon which these plaintiffs and the other qualified electors relied in so casting their ballots at said election, and that the State Highway Commission threatens and is about to expend a large portion of said $900,000 in the construction of a highway at such different location.

Certain paragraphs of the petition necessary to a discussion of the case will be hereafter more fully set out.

The board of county commissioners, answering the petition of plaintiffs, admit they are duly elected, qualified, and acting commissioners of the county of Lincoln, and deny each, every, and all of the other material allegations of plaintiffs' petition.

The defendants Lew Wentz, C. M. Boswell, and L. C. Hutson admit that they are the members of and constitute the State Highway Commission of the state of Oklahoma, and that they are acting as the legally constituted and authorized State Highway Commissioners of the state of Oklahoma and not in their individual capacities. Further answering, they state that this action is an action which is in effect, against the state of Oklahoma, and that the state of Oklahoma does not consent to be sued herein. The defendants admit that the board of county commissioners of Lincoln county, Okla., delivered to the State Highway Commission of the state of Oklahoma a sum of $900,000, derived from a bond issue for the purpose of building and constructing highways in Lincoln county, Okla. The defendants further admit that they have a contract with Lincoln county, Okla., in which the State Highway Department, for and in consideration of the sum of $900,000, agreed to build the state highway system of Lincoln county, and that no additional funds would be expended by Lincoln county other than the said $900,000.

"For affirmative defense the defendants allege and state that under the provisions of chapter 48, Session Laws 1923-24, the State Highway Department has the supervision of highways and bridges constructed, improved, or maintained by aid of state or federal funds, and that such Highway Department has the exclusive authority to designate state highways and let contracts for the improvement thereof, where the same are constructed in whole or in part by state or federal aid.

"For further affirmative defense, the defendants allege and state to the court that, in order to procure federal aid on any given project, it is necessary to have the approval of said project by the Federal Bureau of Roads, in accordance with the provisions of an Act of Congress of July 11, 1916, as amended and supplemented; that the road involved herein is known as section K of Federal Aid Project No. 136, and on or about the 12th day of July, 1929, the federal government, in pursuance of law, made a project, survey, and report of said Federal Aid Project No. 136, and that the same was located upon the identical so-called cut-off sought to be constructed by these defendants; a copy of said project, survey, and report is hereto attached, made a part hereof, and for identification is marked exhibit 'A'. That subsequent to the said report, the federal government, through its duly authorized agents, approved the same, and that, in order to secure federal aid on the whole project, it is necessary that the state of Oklahoma construct section K in accordance with the project agreement so entered.

"For further affirmative defense, the defendants allege and state to the court that, at the time the $900,000 of bond money of Lincoln county, Okla., was delivered to the State Highway Commission, the county commissioners of Lincoln county were informed that, in order to begin the building of said state highway in said county, it would be necessary to use the funds of said

county without state or federal aid, but that such state and federal aid would be allocated to said improvements as soon as funds were available for such purpose.

"The defendants further allege and state that they have not sought and do not intend to use any of the funds derived from the bond issue in Lincoln county to build the so-called cut-off, but that the same will be constructed entirely of funds derived by the state of Oklahoma from the federal government and other sources, and that it intends to and will build a hard surface upon the present drained and graded road through the town of Davenport.

"Wherefore, the highway commissioners pray the court that no judgment be entered against them enjoining the expenditure of any funds in the highway maintenance and construction fund at this time, or which may be hereafter received from other sources than the bond issue of said Lincoln county in the building of said so-called cut-off, and for such other and further relief as to the court may seem just, right, and proper."

To this answer the plaintiffs filed their reply, in which they deny each and every allegation of new matter contained in the answer of the State Highway Commission.

The first assignment of error discussed in the brief of plaintiffs in error is No. 5:

"Error of the trial court in holding that said suit was not an action against the state of Oklahoma."

Under the allegations in the petition, we cannot agree with this contention of the plaintiffs in error. It will be noted that the petition alleges:

"That the defendants Lew Wentz, C. M. Boswell, and L. C. Hutson, as members of and constituting said Highway Commission of the state of Oklahoma, are threatening to, about to, and will, unless enjoined from so doing, change the location of said highway as so designated, promised, and agreed, from the location running along the north side of the original town of Davenport and across said Broadway street, to a location leaving said state highway at a point approximately three-fourths of a mile west of said town of Davenport, and running thence in a northeasterly direction to a point upon said state highway approximately one-half mile north of said town of Davenport; said state highway as herein referred to being the same highway as it was located or proposed to be located in said proclamation, agreements, and promises, as above mentioned in 1927. That said threatened change of the location of said highway is contrary to and in direct violation of said proclamation, agreements, and promises upon which these plaintiffs and said other qualified electors relied in so casting their ballots at said

election, and in direct violation of said agreements between said State Highway Commission and said board of county commissioners of Lincoln county, Okla., by reason of which said bonds were so authorized at said election by said qualified electors, were so issued by said board of county commissioners of Lincoln county, Okla., and said $900,000 of the proceeds thereof so turned over and delivered to the State Highway Fund and the control of said State Highway Commission.

"That if the location of said highway is thus changed, as said defendants threaten, and are about to change the same, and threaten and are about to spend a large part of said $900,000 in the construction of a highway at such different location, these plaintiffs and each, every and all of the other said qualified electors and taxpayers of the town of Davenport and community similarly situated, will suffer irreparable loss and damage thereby."

This court in the case of Allen v. Board of Commissioners of Logan County, 131 Okla. 41, 267 Pac. 860, says:

"When funds are raised by the issuing of bonds or by taxation for a designated purpose, they cannot be diverted to some other purpose.

"Where the resolution and proclamation of the board of county commissioners, calling an election for the purpose of voting bonds for the construction of permanent roads, designate the roads to be constructed, the board has no authority to expend all the proceeds of such bonds on a portion of said roads to the exclusion of others so designated, as the order calling the election and the ratification of that order by the electors in adopting the bonds at a subsequent election, in effect, constituted a contract between the county and the individual's whose property was affected, and it could not be materially altered by one of the parties alone."

In the case of Thompson v. Pierce County, 193 Pac. 706, the Supreme Court of Washington had a very similar proposition under consideration; in that case the county commissioners' resolution and notice of election being for issuance of $2,500,000 bonds for constructing new roads and improving established roads. One of the projects being $135,700 for the G Highway, between certain points, the court held such item of the proceeds is available only for improving the G Highway on its existing route and not for construction on a new line for part of the way, constituting a material departure.

In this case we are of the opinion that the State Highway Commission could not ma-

terially change the course of the highway involved in this action, and that under their contract with the board of county commissioners of Lincoln county, they are required to construct the highway,

"From the west line of Wellston township to the east line of Keokuk township, passing through the towns of Wellston, Chandler, Stroud and along the north side of the original town of Davenport and across Broadway street, following as near as practicable the present state highway and approximately 30 miles in length."

This being the view we take of the case, we hold that the State Highway Commission had no authority to materially change the route of this particular highway, and use funds derived from the sale of the Lincoln county road bonds to improve the same. These bonds were voted to raise funds to construct certain designated highways and must be used for such purposes.

"When officers of the state act under invalid authority, or exceed or abuse their lawful authority, and thereby invade private rights that are secured by the Constitution, an action to redress injuries caused by the unauthorized act is not a suit against the state, since the acts of officials that are not legally authorized, or that exceed or abuse authority or discretion conferred upon them, are not acts of the state." Louisville & Nashville Ry. Co. v. R. Hudson Burr et al., Ry. Commissioners, 63 Fla. 491, 58 So. 543.

Hence, we are of the opinion that, under the allegations of the petition, the same charges the State Highway Commission with performing acts not legally authorized and which exceed the authority of the State Highway Commission, and therefore, the action is not one against the state. However, we are of the opinion that by chapter 48, Session Laws 1923-24, the State Highway Commission is created and vested with powers and duties necessary to fully and effectively carry out all of the objects of the act creating it, and when acting consistently with said act it cannot be enjoined from using the funds in its possession and under its control in constructing and improving highways which it is authorized to construct and maintain, except such funds as are raised by the issuing of bonds or taxation for designated purposes, such funds must be used for the purpose raised and designated. Allen v. Board of County Commissioners, supra, and Leininger v. Ward, 126 Okla. 114, 258 Pac. 863. The Highway Commission is authorized and has the power to use state highway funds or federal aid funds or both in the construction of the cut-off referred to in the pleadings and the injunction order, and the district court of Oklahoma county has no authority to enjoin the State Highway Commission from constructing the cut-off until such time as they have constructed or let contracts for constructing the proposed highway from Chandler east through the town of Davenport and along the north side of the original town thereof and through and across Broadway street in said town of Davenport and north to intersect with the main highway running to the town of Stroud, for such an order would prevent them from doing what they are authorized to do, and would convert this into an action against the state.

In constructing the cut-off, the State Highway Commission was exercising powers and duties which they are authorized to exercise, but they have no power or authority to use any of the funds turned over to the State Highway Commission to construct certain designated highways in Lincoln county for any purposes other than those designated, and when they do so they act beyond their authority and may be enjoined from so doing.

The Attorney General, appearing for the State Highway Commission, in his brief and oral argument states that the State Highway Commission intended to fully complete the road project in Lincoln county in accordance with the agreement between the State Highway Commission and board of county commissioners of Lincoln county, and that they expect to construct the road through the town of Davenport as indicated in the proclamation calling the bond election, and to furnish all necessary funds in addition to the $900,000 furnished by Lincoln county in completing the several road projects mentioned in the proclamation calling the bond election. This is all that they are required to do under the contract with the board of county commissioners of Lincoln county, and no special time being specified for the performance of the contract, under section 5060, C. O. S. 1921, they have a reasonable time in which to perform the same. Following this section of the Statutes this court has repeatedly held that where no time for the performance is fixed by the contract, the law implies generally that the performance is to take place within a reasonable time. This is the general rule announced by the authorities where no statute is in force to the contrary.

"The question as to what is a reasonable time for the performance of a contract fixing no time for performance depends on the nature of the contract and the particular

170

circumstances." 13 C. J. para. 782, page 685.

It must be borne in mind that the highway system in Lincoln county, Okla., is only a part of the great highway system of the state of Oklahoma, and that in performing this contract between the State Highway Commission and the board of county commissioners of Lincoln county, Okla., the State Highway Commission should act fairly and justly with Lincoln county, Okla., in completing the same, yet it must complete contracts in a number of other counties that have voted bonds and turned over funds to be expended by the State Highway Commission. The State Highway Commission must also construct roads and expend highway funds in counties that have not voted bonds, and all these matters must be taken into consideration by the people of this state in urging the completion of any particular part of the highway system of the state, and what would be a reasonable time for the Highway Commission to perform this work and complete these contracts is very different than if the Highway Commission only had one county to serve. The State Highway Commission has stated they intend to complete these contracts in good faith. They are public officials of the state and the law presumes that they will do so, until a contrary intention is clearly made to appear.

We are of the opinion that the judgment of the district court of Oklahoma county should be modified so as to enjoin the State Highway Commissioners from using any of the $900,000 turned over to the State Highway Commission by the board of county commissioners of Lincoln county, Okla., in building the cut-off mentioned, and vacated in so far as it enjoins the State Highway Commission from using federal aid or other state highway maintenance and construction funds in constructing said cut-off. It is so ordered.

As so modified, the judgment of the district court of Oklahoma county, Okla., is affirmed.

MASON, C. J., LESTER, V. C. J., and HUNT, RILEY, HEFNER, and CULLISON, JJ., concur. CLARK, J., absent. ANDREWS, J., disqualified and not participating.