## STATE HIGHWAY COMMISSION v. YOUNGER et al.

No. 23925.    Feb. 26, 1935.

J. Berry King, Atty. Gen., W. C. Lewis, Asst. Atty. Gen., and R. A. Keller, for plaintiff in error.

Sid White, for defendants in error.

CORN, J. This action was commenced in the district court of Oklahoma county by Edgar B. Younger and Galen Younger, doing business as copartners under the name of Younger Brothers, against the State Highway Commission of the state of Oklahoma, composed of Sam Hawks, chairman, J. F. McKeel and Maude O. Thomas, members, seeking a writ of mandamus to compel the State Highway Commission to return to them a certified check in the sum of $4,000 which the said Younger Brothers deposited with the Commission as a proposal guaranty accompanying their bid on certain road construction work.

The Commission filed a return to the alternative writ issued in said cause resisting the issuance of a peremptory writ and setting up as a ground for the dismissal of said action that the same constituted a suit against the state of Oklahoma and that the state had not consented to the filing of said suit; and further alleging, in substance, that the Commission had been delayed in awarding the contract beyond the 30-day time limit contained in the proposal by a temporary restraining order issued out of

the district court of Oklahoma county and that the award was not made within the time limit on that account, and by no fault of the Commission. The trial of the cause in the court below resulted in a judgment granting said contractors a peremptory writ of mandamus ordering the Commission to return the check. For a reversal of said judgment this appeal was taken.

The facts in the case are that the State Highway Commission advertised for bids on a certain road construction project, and that the above-named contractors, the defendants in error herein, submitted a bid on the job and accompanied their bid with a certified check of $4,000, which was equal to more than 5 per cent. of the bid, the rules promulgated by the Commission designated as "Standard Specifications" requiring that bidders deposit with the Commission a certified check equal to 5 per cent. of their bid as a guaranty of good faith in making their bid. For a full understanding of the conditions under which the certified check was deposited with the Commission, we copy herein section 3.03 of Standard Specifications, which reads as follows:

"As soon as the proposal prices have been compared, the engineer may, at his discretion, return the certified checks accompanying those proposals, which in his judgment, would not be considered in making the award. When award is made, the successful bidder's check only will be retained until the contract and bond have been executed, after which it will be returned to the bidder. Should the award be delayed more than thirty (30) days, all bidders' checks will be returned."

The bids were opened and filed by the Commission on May 24, 1932, and it appears from the record that both the Commission and the contractors had knowledge of the restraining order at that time. The Commission was unable to remove this restraint until several days after the 30-day period had expired. On July 2, 1932, the Younger Brothers sent the agent of their bonding company, who ordinarily attended to the filing of their bonds with the Commission, to the Highway Department to see if they could withdraw their bid. The matter was discussed with an assistant to the chief engineer, but was not presented directly to the commissioners or acted upon by them. On July 7, 1932, 44 days after the bids were opened, the Commission notified said contractors by telephone that they were the successful bidders and that the contract would be awarded to them. Said contractors did not accept the contract, and on July 11, 1932,

wrote a letter to the Commission setting out their reasons for refusing the contract, the material part of said letter being as follows:

"At the time we figured our bid on this project we, of course, anticipated that in event we were low bidders the job could be completed under summer working conditions.

"Also in accordance with provisions contained in section 3, paragraph 3.03, Standard Specifications of the Oklahoma State Highway Commission, which provides that 'should the award be delayed more than thirty (30) days all bidders' checks will be returned,' we naturally assumed that inasmuch as we had not been awarded the contract we did, on or about July 1, 1932, make other arrangements for the use of our capital and equipment."

The Commission refused to return the certified check to Younger Brothers, and they filed mandamus proceedings in the court below on July 15, 1932.

The plaintiffs in error present their case under two general propositions: (1) That this is an action against the state of Oklahoma and cannot be maintained without the consent of the state granted by direct legislative enactment; and (2) that there is no law which enjoins upon the state of Oklahoma, or the State Highway Commission as the agents thereof, the return of the check involved in this action.

The rule defining the distinction between an action against the state and an action against state officers was laid down and applied by this court in the following cases: Wentz v. Ingenthron, 146 Okla. 165, 294 P. 154; Wentz v. Board of Com'rs, 147 Okla. 173, 295 P. 599; Wentz v. Dawson, 149 Okla. 94, 299 P. 493; and Hawks v. Seay, 150 Okla. 160, 1 P. (2d) 148; and it was stated as follows:

"When officers of the state act under invalid authority, or exceed or abuse their lawful authority, and thereby invade private rights that are secured by the Constitution, an action to redress injuries caused by the unauthorized act is not a suit against the state, since the acts of officials are not legally authorized, or that exceed or abuse authority of discretion conferred upon them, are not acts of the state." (Wentz v. Ingenthron, supra.)

The question then arises, Was the action of the State Highway Commission in refusing to return the certified check to defendants in error an illegal or unauthorized act, or an act in abuse of discretion against which the courts will afford relief?

Section 5 of chapter 245, S. L. 1929 (sec. 10091, O. S. 1931), provides in part as follows:

"The construction and maintenance of the state highway system, and all work incidental thereto, shall be under the general supervision and control of the State Highway Commission, which is hereby authorized, empowered, and directed to take whatever steps may be necessary to cause said state highway system to be constructed at the earliest possible time, consistent with good business management and fund available after this act takes effect, and also to provide for the maintenance of the said state highway system. The State Highway Commission shall have power to make all final decisions affecting the work provided for herein, and all rules and regulations it may deem necessary, not inconsistent with this act, for the proper management and conduct of said work, and for carrying out all the provisions of this act in such manner as shall be to the best interest and advantage of the people of this state. * * *"

Thus it will be noted that the State Highway Commission was empowered to make rules and regulations, not inconsistent with the act, for the proper management and conduct of the work. Section 3.03, Standard Specifications, does not appear to be inconsistent with the act, but is necessary for a proper understanding between the Commission and contractors with regard to returning certified checks.

Rules and regulations adopted by the State Highway Commission under authority of a statute and not inconsistent with the purpose of such statute are binding and controlling in all transactions had thereunder, and the same rules are applicable thereto in determining whether a duty arising thereunder is discretionary or ministerial as apply to a statute.

Section 3.03, Standard Specifications, furnishes the basis for the understanding between the parties when the certified check was deposited with the Commission, and the law of contracts does not appear to be involved in the transaction. The certified check was deposited with the Commission pursuant to said section 3.03, Standard Specifications, in order to qualify defendants in error as bidders on the project and was not deposited under any contract between the parties.

The foregoing provision was just as binding upon the Commission in handling the certified check as it was upon the contractors in requiring them to deposit same with their bid in order to become a bona fide bidder; and it was not left to the discretion of the Commission as to when the certified check was to be returned, but the limit of 30 days contained in the specification fixed the time that the Commission could hold it.

The check never did become the property of the state and could not have become the property of the state unless the Commission had awarded the contract within 30 days and the defendants in error had rejected it. The fact that the Commission was prevented from awarding the contract within 30 days by the restraining order does not operate to extend the time for awarding the contract.

As we view the case, the return of the check was a plain ministerial duty, and failure of the Commission to return it to defendants in error at the expiration of 30 days was an invasion of a private right secured by the Constitution of this state, and we hold, the trial court did not err in holding that this is not an action against the state, and that the defendants in error were entitled to the return of the certified check.

The judgment of the trial court is, therefore, affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and WELCH, JJ., concur.