NEWMAN et al. v. ARDMORE ROD & GUN CLUB et al.

No. 30903. April 28, 1942.

*125 P. 2d 191.*

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen and Stephen D. Holloway, Asst. Attys. Gen., for plaintiffs in error.

H. A. Ledbetter and Guy H. Sigler, both of Ardmore, for defendants in error.

GIBSON, J. This action was commenced in district court by the Ardmore Rod & Gun Club, a corporation, against the State Game and Fish Commission and certain of its agents to enjoin defendants from interfering with plaintiff's alleged vested right to fish in its own lakes located on its privately owned premises.

Judgment was for plaintiff, and defendants appeal.

Pursuant to authority allegedly delegated by chapter 6, title 29 (S. B. 219) S. L. 1941, the State Game and Fish Commission promulgated an order designating the spawning season as from April 1 to May 15, 1942, and purporting to close to fishing during that period all Oklahoma waters stocked from state hatcheries, including private lakes. Plaintiff's lakes were last stocked with spawn and fish by the state in 1940, but they have not been restocked since that time. Defendants now propose to extend their authority to plaintiff's lakes and enforce upon it the closed season.

The 1941 Statute, above, so far as material here, reads as follows:

"The State Game and Fish Commission is hereby authorized to declare a closed season on fishing and taking of bull frogs of all kinds in all the streams, lakes and ponds in the State of Oklahoma during spawning season, except rivers and streams and such lakes or ponds which do not receive fish or spawn from the State Fish and Game Department; said spawning season to be determined and fixed by the State Game and Fish Commission annually, for only one period each year and not to exceed forty-five (45) days in any one year."

Defendants take the position that the Legislature by the statute aforesaid has properly extended the police powers of the state to control the fishing season in all waters, including privately owned lakes and ponds, which had theretofore received, or might thereafter receive, spawn and fish from the State Fish and Game Department. It is urged that the statute, though it excludes from its operation all waters "which do not receive fish or spawn" from the state, was intended by the Legislature to act retrospectively and to include all waters which had theretofore received such fish

or spawn from the state pursuant to the request of the owners of such waters.

More specifically, it is urged that fishing in privately owned lakes which have been stocked by the state may be regulated in all respects the same as in streams where the fish are free to pass to and from other waters and premises. This contention apparently springs from the assumption that the owner of the lake, by accepting the fish and spawn, places himself under contractual obligation, express or implied, to abide by all regulatory measures then in force or thereafter to be adopted and promulgated by constituted authority.

Plaintiff contends that there is nothing in the statute to indicate an intention on the part of the Legislature that the statute operate retrospectively to include lakes such as those of the plaintiff which have not been stocked by the state since the enactment became effective. This, says plaintiff, becomes more apparent when the statute is construed in connection with certain other acts of a similar nature passed at the same session of the Legislature.

It is further urged that said statute, if held to operate retrospectively, would be unconstitutional as an excessive application of police powers to the point of unwarranted interference with vested property rights in the fish, and would result in depriving the plaintiff of such property without due process of law.

And, further, it is urged that if the right of the state to regulate the fishing seasons is dependent on contractual obligation as aforesaid, the statute, if applied here, would impair the obligation of such contract.

We do not say that the owner of a private lake who accepts spawn or fish for stocking such lake may not expressly or impliedly bind himself to comply with any lawful regulatory measures presently existing pertaining to the taking of fish from lakes of a like character. But it is certain that the mere acceptance of such benefits from the state would not raise an implied agreement

on the part of the owner of the lake to be bound by all future laws and regulations pertaining to fishing. Existing laws might by implication enter into and become a part of the gift transaction, but future laws could not unless the existing law so provided.

In the instant case there is nothing in the record to indicate that plaintiff agreed to abide by future enactments. At the time plaintiff accepted the spawn from the state there were no laws in existence purporting to regulate fishing seasons. It cannot be said that the club impliedly agreed to accept and abide by any laws other than those then in force.

Plaintiff's lakes are entirely enclosed by its own land and are not located on a stream where fish may freely pass to and from other waters. In such case the fish, while yet uncaught, it is said constitute the private property of the owner of the lake; that the public is entirely without interest in the lake or in the fish, and that the Legislature cannot touch the same under the guise of police power. This is supported by the text in 26 C. J. 599, wherein it is said:

"The right of fishing in a small lake or pond inclosed by the owner's land and having no communication through which fish are accustomed to pass to other waters belongs exclusively to the owner thereof; but it has been held otherwise as to lakes having outlets to other waters through which fish are accustomed" to pass." See, also, 22 Am. Jur. 699.

The statute in question is entitled to the presumption of constitutionality. It applies generally to all lakes, but specifically excludes from its operation those lakes "which do not receive fish or spawn" from the state. Were we to say that the exception was not intended to apply to those landlocked private lakes which had theretofore received spawn from the state, but had received none since the enactment, there would be a grave question as to the constitutionality of a portion of the act as an unauthorized invasion of the rights in private property. The words "which do not receive" clearly contemplate the

future, and have no reference to the past.

We therefore hold that the statute in question does not purport to authorize the commission to regulate fishing seasons in private lakes of this character where the fish are not free to pass in waters to and from the same.

Whether state regulations may be enforced as a result of express or implied contract between the owner and the state is not for our determination, and we express no opinion thereon. There was no such contract here. It is sufficient to say that the Legislature intended to exclude from the regulation this particular type of lake, at least until such time as the owner might accept spawn or fish from the state to stock such lake.

Defendants cite Gratz v. McKee, 270 Fed. 713, 23 A.L.R. 1393, as authority that the state's power to regulate is superior to the right of private ownership of fish in waters on private land. But defendants admit that the lake in that case was not situated entirely on land of private owners, and that said lake was on a stream. The statute there considered expressly excluded from its operation fish "now held by private ownership." The case is not in point.

Defendants say that since the statute is penal in nature, the officers may not be enjoined from enforcing it. Colbert v. Superior Confection Co., 154 Okla. 28, 6 P. 2d 791. It is true the officers may not be enjoined from enforcing the plain provisions of a valid penal statute, but where officers are threatening an illegal invasion of private rights, as in the instant case, and the ordinary remedies afforded by the courts are inadequate, injunction is proper. Wentz v. Ingenthron, 146 Okla. 165, 294 P. 154. In the instant case injunction was the only adequate remedy.

The judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, HURST, and DAVISON, JJ., concur. OSBORN, BAYLESS, and ARNOLD, JJ., concur in conclusion.

---

OSBORN, J. (specially concurring). I concur in the conclusion in the above cause for the reason that the police power of the state does not extend to control over fish in a landlocked lake situated on private property. Such was the lake in this case. There was no contract between the state and the owner of this lake which prevented such owner's use of its property as it saw fit to make. The discussion contained in the majority opinion as to whether or not the exception contained in the quoted statute operates retrospectively or prospectively is wholly beyond the issues necessarily and properly determined herein, and on that question I therefore express no opinion.

---

ARNOLD, J. (concurring specially). The majority opinion correctly holds there was no contract between the owner of the land involved and the State Game and Fish Department. This question having been determined, the case is bottomed fundamentally upon the power of the state, through the Legislature and the State Game and Fish Department, by the exercise of the police power, to determine and fix a spawning season applicable to a landlocked lake and prevent fishing on such privately owned lake entirely surrounded by land of the owner and having no inlet or outlet through which such lake might be stocked or supplied with fish from public streams or sources.

The police power of the state does not extend to such a situation. As disclosed by the undisputed facts of the case, the act under consideration has no application to the lake in question. There being no such police power as here attempted to be exercised, our discussion of the issues regarding the retroactive and prospective nature of the act is obiter dictum.