Argued June 27, reversed October 2, reconsideration denied November 28, 1978

GAST et al, *Respondent,*
*v.*
STATE ex rel STEVENSON, *Appellant.*
(No. A7710-14092, CA 9686)

585 P2d 12

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Richard H. Muller, Portland, argued the cause for respondent. With him on the brief was Bouneff, Muller & Marshall, Portland.

Lawrence Wobbrock, Portland, argued the cause amicus curiae for the American Civil Liberties Union Foundation of Oregon, Inc. On the brief was Ann Morgenstern, Portland.

Before Johnson, Presiding Judge, and Gillette and Roberts, Judges.

JOHNSON, P. J.

**JOHNSON, P. J.**

Plaintiff brought this suit for a declaratory judgment praying for a declaration of rights and duties under Oregon Laws 1977, ch 330, amending ORS 659.030.[1] Chapter 330 provides:

"* * * * *

"SECTION 1. Section 2 of this Act is added to and made a part of ORS 659.010 to 659.110.

"SECTION 2. For purposes of ORS 659.030, the phrase 'because of sex' includes, but is not limited to, because of pregnancy, childbirth and related medical conditions or occurrences. Women affected by pregnancy, childbirth or related medical conditions or occurrences shall be treated the same for all employment-related purposes, *including receipt of benefits under fringe benefit programs,* as other persons not so affected but similar in their ability or inability to work by reason of physical condition, and nothing in this section shall be interpreted to permit otherwise." (Emphasis supplied.)

The trial court entered a judgment declaring that Chapter 330 violates the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, insofar as it applies to employee welfare benefit plans subject to the Employee Retirement Income Security Act of 1974, 29 USC §§ 1001 to 1381 (ERISA). On appeal the state contends the trial court lacked jurisdiction because of sovereign immunity and that in any

---

[1] ORS 659.030 provides in pertinent part:

"(1) For the purposes of ORS 659.010 to 659.110 and 659.400 to 659.435, it is an unlawful employment practice:

"(a) For an employer, because of an individual's race, religion, color, sex, national origin, marital status or age * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment. * * *

"(b) For a labor organization, because of an indivdual's race, religion, color, sex, national origin, marital status or age * * * to discriminate in any way against any such individual or any other person."

"* * * * *."

event ERISA does not preempt the state from regulating the matters covered by Chapter 330.[2] We conclude that the trial court had jurisdiction, but was in error as to federal preemption.[3]

### Sovereign Immunity

■ The state contends for the first time on appeal that the trial court lacks jurisdiction because of sovereign immunity. Immunity enjoys constitutional status in Oregon by virtue of Article IV, Section 24 of the Oregon Constitution. *Vendrell v. School Dist. No. 26C et al,* 226 Or 263, 360 P2d 282 (1961). That section provides:

> "Provision may be made by general law, for bringing suit against the State, as to all *liabilities* originating after, or existing at the time of the adoption of this Constitution; but no special act authorizeing (sic) such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed." (Emphasis supplied)

The issue which we decide here is whether sovereign immunity extends to a suit in which the only relief prayed for is a declaration that a state statute violates the Supremacy Clause of the United States Constitution. Sovereign immunity does not apply to such suits because the relief sought is not against the state as sovereign, but to prevent government officials from engaging in ultra vires acts.[4] The seminal case is

---

[2]Plaintiffs also alleged that Chapter 330 violates the Oregon and United States constitutional provisions concerning abridgment of contracts and equal protection of the laws. The trial court held for defendants, and plaintiffs do not cross-appeal.

[3]The state also contends that the decree was overbroad in that it purports to cover matters expressly exempted from ERISA. We disagree. The decree expressly states that Chapter 330 is invalid only "insofar as it applies to health and welfare benefit plans funded or subject to the Employee Retirement Income Act of 1974."

[4] *See e.g. Aland v. Graham,* 287 Ala 226, 250 So 2d 677 (1971); *Etheredge v. Bradley,* 480 P2d 414 (Alaska 1971); *Textron, Inc. v. Wood,* 355 A2d 307 (Conn 1974); *Dennison Mfg. Co. v. Wright,* 156 Ga 789, 120 SE 120 (1923); *Century Distilling Co. v. Deffenbach,* 99 P2d 56 (Id. 1940); *Collins v. State Bd. of Social Welfare,* 81 NW2d 4 (Iowa 1957); *Bradshaw v. Ball,* 487

*Ex parte Young,* 209 US 123, 28 S Ct 441, 52 L Ed 714 (1908), in which the U. S. Supreme Court stated:

"* * * The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional. If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the

SW2d 294 (Ky 1972); *Jones v. Maine State Highway Comm'n.,* 238 A2d 226 (Maine 1968); *Sheridan v. Gardner,* 196 NE2d 303 (Mass 1964); *Merchants' Exchange v. Knott,* 212 Mo 616, 111 SW 565 (1908); *O'Neil v. Thomson,* 316 A2d 168 (NH 1974); *Conway v. New Hampshire Water Resources Bd.,* 89 NH 346, 199 A 83 (1938); *Abelson's Inc. v. New Jersey State Bd. of Optometrists,* 5 NJ 412, 75 A2d 867 (1950); *State Highway Comm'n v. Younger,* 170 Okla. 614, 41 P2d 686 (1935); *Vance v. Kassab,* 325 A2d 924 (Pa Cmwlth 1974); *Ware Shoals Mfg. Co. v. Jones,* 78 SC 211, 58 SE 811 (1907); *Croom v. Pennington,* 59 Fla 473, 52 So 957; *White Eagle Oil & Refining Co. v. Gunderson,* 48 SD 608, 205 NW 614 (1925); *Cochran v. Cavanaugh,* 252 SW 284 (Tex.Civ.App. 1923); *State v. Superior Court for King County,* 46 P2d 1046 (Wash 1935); *Coal & Coke Ry. Co. v. Conley,* 67 W Va 129, 67 SE 613 (1910); *Barry Laboratories, Inc. v. Wisconsin State Bd. of Pharmacy,* 26 Wis 2d 505, 132 NW2d 833 (1965).

The Oregon Supreme Court and this court have assumed jurisdiction to decide on the merits the constitutionality of state statutes in declaratory judgment suits where the state or one of its officials was named as party defendant. *See Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975); *Campbell v. Henderson,* 241 Or 75, 403 P2d 902 (1965); *Mallatt v. Luihn,* 206 Or 678, 294 P2d 871 (1956); *Film Follies, Inc. v. Haas,* 22 Or App 365, 539 P2d 669 (1975); *Myatt v. State,* 7 Or App 584, 492 P2d 495 (1972).

It should be noted that in these Oregon cases the issue of sovereign immunity was not raised by the defendant. If sovereign immunity is jurisdictional as is stated by the Oregon Supreme Court's opinion in *James & Yost v. Board of Higher Edu.,* 216 Or 598, 340 P2d 577 (1959), then these cases must be construed as holding that sovereign immunity does not apply where the relief being sought is a declaration regarding the constitutionality of a state statute. On the other hand, the *holding* in *James & Yost* is that sovereign immunity is a defense which may be waived. *Cf. Comley v. State Bd. of Higher Ed.,* 35 Or App 465, — P2d — (1978); *Moody v. Lane County* (pending in conference). Correspondingly, the state's failure here to assert this defense in the trial court would constitute a waiver. We do not reach this issue here, but rest our decision on other grounds.

[ 445 ]

superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsbility to the supreme authority of the United States. See Re Ayers, 123 U.S. 507, 31 L. ed. 230, 8 Sup. Ct. Rep. 164. It would be an injury to complainant to harass it with a multiplicity of suits or litigation generally in an endeavor to enforce penalties under an unconstitutional enactment, and to prevent it ought to be within the jurisdiction of a court of equity * * *.

209 US at 159-60, 52 L Ed at 729.

The United States Supreme Court continues to follow *Ex parte Young. See, e.g., Edelman v. Jordan,* 415 US 651, 39 L Ed 2d 662, 94 S Ct 1347 (1974). The Oregon Supreme Court expressly adopted that rationale in *Hanson v. Mosser,* 247 Or 1, 7, 427 P2d 97 (1967), in allowing a declaratory judgment action against state officials for allegedly entering into contracts prohibited by state statute. The court stated:

"The courts have recognized that acts done by officials of the state without authority or in excess or abuse of authority are done without the sanction of the state and may be enjoined. It is the theory of such suits that public officers hold and can exercise only the authority lawfully delegated to them. Where, then, officers act beyond or in abuse of their delegated authority they act as individuals, and a suit to enjoin their wrongful acts is not one against the state. * * * * *"

■ *Hanson* is distinguishable from the present case only in the fact that in *Hanson* the officials were named as defendants, whereas here the state is named as defendant acting "by and through" the Labor Commissioner. Courts in other states have held that jurisdiction lies even though the state or one of its agencies is named defendant on the theory that the determinative issue is not who is named as defendant, but whether the relief is directed against the state as

sovereign or against state officials.[5] In *Hanson* the court stated:

> "[I]n a suit against an officer *or agency of the state,* the court is not bound by the record, but will look to determine the real party in interest and if that is the state then the suit may not be maintained unless consent has been given." (Emphasis supplied) (Citations omitted)

247 Or at 6.

To dismiss the present case because plaintiff failed to name the Labor Commissioner individually as a defendant would be to honor form over substance and invite the kind of vexatious litigation which *Ex parte Young* sought to prevent. As has been recognized, *Ex parte Young* and its progeny rest on a legal fiction designed to provide private citizens a means for challenging illegal conduct by government. *See, e.g., Lister v. Board of Regents of the University of Wisconsin System,* 72 Wis 2d 282, 240 NW 2d 610 (1976); Gellhorn and Byse, Administrative Law 311 (6th ed. 1974). The transparency of that fiction should not become a device for defeating its purpose. Whether we follow the fiction or adopt the plausible rationale that the "liabilities" referred to in Article IV, Section 24 of the Oregon Constitution do not include a prospective declaration as to the constitutionality of a statute, we hold that the trial court had jurisdiction.

## Federal Preemption

■ Plaintiffs are trustees of a health and welfare trust established pursuant to collective bargaining agreements between various employers and labor organizations. The employers make contributions to the trust which in turn purchases insurance providing death,

[5]*See, e.g., J. R. Southall v. Stricos Corp.,* 153 So 2d 234 (Ala. 1963); *Barry Laboratories v. Wisconsin State Bd. of Pharmacy,* 26 Wis 2d 505, 132 NW2d 833 (1965). *See also County of Los Angeles v. State Dep't of Pub. Health,* 322 P2d 968 (Cal. App. 1958); *Collins v. State Bd. of Social Welfare,* 81 NW2d 4 (Iowa 1957); *Jones v. Maine State Hwy. Comm'n.,* 238 A2d 226 (Maine 1968); *Conway v. New Hampshire Water Resources Bd.,* 89 NH 346, 199 A 83 (1938); *Abelson's Inc. v. New Jersey State Bd. of Optometrists,* 5 NJ 412, 75 A2d 867 (1950).

disability, hospital, medical, dental and vision benefits for active and retired former employees and eligible dependents. The practical effect of Chapter 330 is that some of the insurance programs purchased by the trustees will have to include pregnancy benefits and failure to do so would constitute an unlawful employment practice under the Oregon Civil Rights Act. ORS 659.030.[6] The health and welfare trust administered by plaintiffs is an "employee benefit plan" subject to ERISA. 29 USC §§ 1002 and 1003.[7] ERISA is a federal

---

[6]We need not and do not in this opinion decide the precise scope and nature of benefits that would be required to comply with Chapter 330.

[7]29 USC § 1002(1), (2), (3) and (4) provide:

"For the purposes of this subchapter:

"(1) The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

"(2) The terms 'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

"(A) provides retirement income to employees, or

"(B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

"regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

"(3) The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

"(4) The term 'employee organization' means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of

regulatory statute encompassing both "employee pension benefit" and "welfare benefit" programs established or maintained by an employer or an employee organization or both. 29 USC § 1002(1), (2), (3) and (4). The plan at issue here is an "employee welfare benefit plan" in that it provides through "the purchase of insurance or otherwise" for "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability or death." 29 USC § 1002(1).

The question of preemption turns on an interpretation of 29 USC § 1144, a provision of ERISA, which in pertinent part provides:

"(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter *shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title* and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

"(b) * * * * *

"(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

"(B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under

---

dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan."

29 USC § 1003 provides in pertinent part:

"(a) Except as provided in subsection (b) of this section and in sections 1051, 1081, and 1001 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—

"(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

"(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

"(3) by both."

section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

"* * * * *

"(4) Subsection (a) of this section shall not apply to any generally applicable criminal law of a State.

"(c) For purposes of this section:

"(1) The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. * * *

"* * * * *

"(d) Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law." (Emphasis supplied.)

Plaintiffs argue that by the express terms of 29 USC § 1144(a) the federal government has occupied the field with respect to employee health and welfare benefits and has preempted the states from in any way regulating such benefits other than by the specific exceptions provided in 29 USC § 1144(b). The full import of plaintiffs' argument is that states are precluded from regulating any matters that relate to employer or employee organizations' provision of medical, disability or death benefits, vacation benefits, apprenticeship or training programs, day-care centers, scholarship funds, prepaid legal insurance, retirement income or deferred income. The only exceptions are state laws relating to unemployment and workers' compensation law, 29 USC § 1003(b)(3), church and governmental employee benefit plans, 29 USC § 1003(b)(1) and (2), general criminal statutes, 29 USC § 1144(b)(4), and certain laws relating to insurance,

banking or securities, 29 USC § 1144(b)(2). It should be noted that the exception in 29 USC § 1144(b)(2)(A) for state laws regulating insurance, banking or securities is narrow. For example, it does not exempt self-insured employee benefit plans such as we have here. 29 USC § 1144(b)(2)(A). *See* D. Brummond, *Federal Preemption of State Insurance Regulation Under ERISA,* 62 Iowa L Rev 57, 90 (1976).

■ Before further discussing plaintiffs' contentions, we will address the arguments advanced by the state. The state first argues that Oregon Laws 1977, ch 330 does not regulate "employee benefit plans" subject to ERISA. Suffice it to say Chapter 330 regulates "fringe benefit" programs established by employers of labor organizations that provide medical and disability benefits and thus clearly comes within the broad definition of "employee benefit plans" as defined by 29 USC § 1002.

■■ Next, the state contends Chapter 330 is a state law regulating insurance and thus not preempted by virtue of 29 USC § 1144(b)(2). Chapter 330 is not an insurance law, but rather a law regulating employment practices. The statute prescribes the actions of employers and labor organizations and in particular the manner in which fringe benefits are to be provided. As such it does not come within the exception to 29 USC § 1144(a) for state laws regulating insurance, banking of securities. 29 USC § 1144(b)(2).

Finally, the state argues Chapter 330 is not preempted because it is a civil rights statute. Of course, the fact that the legislature characterizes something as a "civil right" is not determinative. The thrust of the state's argument is that 29 USC § 1144(d) expressly provides that ERISA is to be construed not to "alter, amend, modify, invalidate, impair or supersede any law of the United States," that the federal Civil Rights Act, 42 USC § 1981 *et seq.* expressly encourages cooperation between federal and state civil rights agencies in enforcing the federal act,

and that Chapter 330 is a sex discrimination statute as are some of the provisions of the federal Civil Rights Act. The defect with this argument is that the federal Civil Rights Act does not require that pregnancy benefits be paid as part of an employee health and welfare benefit program. *General Electric v. Gilbert,* 429 US 125, 97 S Ct 401, 50 L Ed 2d 323 (1976).

We conclude that Chapter 330 does not come within the specific exceptions prescribed in 29 USC § 1144(b).

■ The question remains whether the broad language of 29 USC § 1144(a) preempts the type of state regulation at issue here. As a rule of construction there is a presumption against preemption:

> "The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained. * * *" *Florida Avocado Growers v. Paul,* 373 US 132, 142, 83 S Ct 1210, 10 L Ed 2d 248 (1963).

*The subject matter* of ERISA does not compel the conclusion that Congress intended to preempt states in regulating such things as pregnancy benefits. The scope of the regulatory scheme embodied in ERISA is limited, particularly with respect to health and welfare benefits. The statutory purposes enumerated in 29 USC § 1001[8] are: (1) to require disclosure and

---

[8] 29 USC § 1001 provides:

"(a) The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee organizations, and other entities by which they are established or maintained; that a large

reporting to beneficiaries; (2) to ensure that employee pension benefit programs are adequately funded; (3) to improve the equities of pension plans; and (4) to establish "minimum standards * * * assuring * * * their financial soundness."

Subchapter I of ERISA is divided into five parts. Part one establishes reporting and disclosure requirements for both pension and welfare benefit plans. 29 USC §§ 1021-1031. Parts two and three establish vesting and funding requirements for pension plans. 29 USC §§ 1051 to 1086. Part four sets forth fiduciary

volume of the activities of such plans is carried on by means of the mails and instrumentalities of interstate commerce; that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; that they substantially affect the revenues of the United States because they are afforded preferential Federal tax treatment; that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, *that minimum standards be provided assuring the equitable character of such plans and their financial soundness.*

"(b) It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

"(c) It is hereby further declared to be the policy of this Act to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance."

standards for both pension and welfare plans. 29 USC §§ 1101 to 1114. These standards require that a plan be in writing and that the assets be held in trust, and restricts the type and manner of investments. Part five contains enforcement measures. 29 USC §§ 1131 to 1144. In summary, with respect to employee welfare benefit plans both the statement of legislative intent contained in 29 USC § 1001 and the substantive provisions of ERISA indicate that Congress confined federal regulation to establishing minimum standards for disclosure and fiduciary responsibility. In the absence of 29 USC § 1144(a) the courts would have no difficulty in concluding that the states are not preempted from enacting more stringent requirements. *See, e.g., Florida Avocado Growers v. Paul, supra.*

More significantly, there is no suggestion in the statute that Congress intended to regulate the substance of health and welfare benefits or the manner in which such benefits are to be provided. Thus, if we are to adopt the construction of 29 USC § 1144(a) advanced by plaintiffs we must import to Congress not only an intent to preempt state law, but also an intent to cease all governmental regulation, state or federal, other than the disclosure and fiduciary requirements of health and welfare benefits paid by employers or employee organizations. There is nothing in the legislative history suggesting such an intent. To the contrary, the legislative history indicates Congress was concerned with the inadequacy of governmental regulations and concluded that there should be at least minimum federal standards with respect to disclosure and fiduciary responsibility. *See, e.g.,* 29 USC § 1001.

The preemption issue presented by 29 USC § 1144 is unique. Federal statutes are commonly either silent as to preemption, or contain detailed provisions specifically defining the scope thereof.[9] The issue confronting the courts has traditionally been one of determining whether the federal regulatory scheme is of such a

---

[9] An example of a specific preemption statute is 42 USC § 300e-10, part of the Health Maintenance Organization Act, which provides:

pervasive nature as to imply that Congress intended to occupy the field. *See, e.g.,* Note, *The Preemption Doctrine: Shifting Perspectives on Federalism and the Burger Court,* 75 Colum L Rev 623 (1975). Here, we have a federal regulatory scheme which regulates a

"(a) In the case of an entity,

"(1) which cannot do business as a health maintenance organization in a State in which it purports to furnish basic and supplemental health services because that State by law, regulation, or otherwise—

"(A) requires as a condition to doing business in that State that a medical society approve the furnishing of services by the entity,

"(B) requires that physicians constitute all or a percentage of its governing body,

"(C) requires that all physicians or a percentage of physicians in the locale participate or be permitted to participate in the provision of services for the entity, or

"(D) requires that the entity meet requirements for insurers of health care services doing business in that State respecting initial capitalization and establishment of financial reserves against insolvency, and

"(2) for which a grant, contract, loan, or loan guarantee was made under this subchapter or which is a qualified health maintenance organization for purposes of section 300e-9 of this title (relating to employees' health benefits plans),

"such requirements shall not apply to that entity so as to prevent it from operating as a health maintenance organization in accordance with section 300e of this title.

"(b) No State may establish or enforce any law which prevents a health maintenance organization for which a grant, contract, loan, or loan guarantee was made under this subchapter or which is a qualified health maintenance organization for purposes of section 300e-9 of this title (relating to employees' health benefits plans), from soliciting members through advertising its services, charges, or other nonprofessional aspects of its operation. This subsection does not authorize any advertising which identifies, refers to, or makes any qualitative judgment concerning, any health professional who provides services for a health maintenance organization.

"(c) The Secretary shall, within 6 months after October 8, 1976, develop a digest of State laws, regulations, and practices pertaining to development, establishment, and operation of health maintenance organizations which shall be updated at least quarterly and relevant sections of which shall be provided to the Governor of each State annually. Such digest shall indicate which State laws, regulations, and practices appear to be inconsistent with the operation of this section. The Secretary shall also insure that appropriate legal consultative assistance is available to the States for the purpose of complying with the provisions of this section. As amended Oct. 8, 1976, Pub.L. 94-460, Title I, § 114, 90 Stat. 1954."

limited area coupled with an express declaration which, if broadly interpreted, preempts states from a multitude of other areas which heretofore have been recognized as valid state concerns. For example, not only would Chapter 330 be unconstitutional, but also the Oregon apprenticeship law, ORS Chapter 660, would be invalidated. Likewise, state statutes such as the California disability insurance program enacted in 1946 would be invalidated. *See Geduldig v. Aiello,* 417 US 484, 94 S Ct 2485, 41 L Ed 2d 256 (1974). Nevertheless, federal courts presented with the issue have interpreted 29 USC § 1144(a) broadly to preempt state legislation in much the same manner suggested by plaintiffs. *See Wadsworth v. Whaland,* 562 F2d 70 (1st Cir 1977); *Bell v. Employee Sec. Ben. Ass'n,* 437 F Supp 382 (D Kan 1977); *Cate v. Blue Cross & Blue Shield of Alabama,* 434 F Supp 1187 (ED Tenn 1977); *Wayne Chemical, Inc. v. Columbus Agency Service Corp.,* 426 F Supp 316 (ND Ind 1977); *Hewlett-Packard Co. v. Barnes,* 425 F Supp 1294 (ND Cal 1977); *Kerbow v. Kerbow,* 421 F Supp 1253 (ND Tex 1976); and *Azzaro v. Harnett,* 414 F Supp 473 (SD NY 1976) *aff'd without opinion* 553 F2d 93 (2nd Cir 1977). Some of these courts, presumably concerned whether Congress ever intended such a broad preemption, have relied on other provisions of ERISA to narrow the scope. In *Wadsworth* and *Cate,* the court broadly interpreted the insurance exception contained in 29 USC § 1144(b)(2). In *Bell,* the court upheld state regulation of an employee group insurance program by narrowly construing the definition of "employee benefit plan" contained in 29 USC § 1002. The court reasoned that although the group insurance program did not come within the express exception for regulation of insurance contained in 29 USC § 1144(b)(2), there was nothing in the legislative history to indicate that Congress intended to leave this type of insurance program free of governmental regulation. 437 F Supp 382 at 390. In *Wayne Chemical,* the court concluded that in broadly preempting the states, Congress also delegated to the federal courts the responsibility for

developing a federal common law to fill the regulatory vacuum left by ERISA.

 In affording a broad interpretation to 29 USC § 1144(a) these federal courts have relied on the legislative history. The original versions of the bills passed by the Senate and House both contained provisions which expressly restricted preemption to state laws which directly related to the specific matters regulated by ERISA.[10] The conference committee abandoned both the House and Senate versions and adopted the present language. The conference committee report merely restates the language of 29 USC § 1144(a), commenting that:

> "Under the substitute, the provisions of title I are to supersede all State laws that relate to any employee

---

[10] The version of H.R. 2 enacted by the House on February 28, 1974 provided:

"Sec. 514. (a) It is hereby declared to be the express intent of Congress that, except for actions authorized by section 503(e)(1)(B) of this Act and except as provided in subsection (b) of this section the provisions of part 1 of this subtitle shall supersede any and all laws of the States and of political subdivisions thereof insofar as they may now or hereafter relate to the reporting and disclosure responsibilities, and fiduciary responsibilities, of persons acting on behalf of any employee benefit plan to which part 1 applies.

"* * * * *

"(c) It is hereby declared to be the express intent of Congress that the provisions of parts 2, 3, and 4 of this subtitle shall supersede any and all laws of the States and of politicial subdivisions thereof insofar as they may now or hereafter relate to the nonforfeitability of participant's benefits in employee benefit plans described in section 201(a) or 301(a), the funding requirements for such plans, the adequacy of financing of such plans, portability requirements for such plans, or the insurance of pension benefits under such plans." 120 Cong. Rec. 4742 (1974).

The version of H.R. 2 enacted by the Senate on March 4, 1974, provided:

"Sec. 699. RELATIONSHIP TO STATE LAWS

"(a) PRE-EMPTION OF STATE LAWS—It is hereby declared to be the express intent of Congress that except for actions authorized by section 694 of this title, the provisions of this Act or the Welfare and Pension Plans Disclosure Act shall supersede any and all laws of the States and of political subdivisions thereof insofar as they may now or hereafter relate to the subject matters regulated by this Act or the Welfare and Pension Plans Disclosure Act * * *." 120 Cong. Rec. 5002 (1974).

benefit plan that is established by an employer engaged in or affecting interstate commerce or by an employee organization that represents employees engaged in or affecting interstate commerce. * * *" United States Code Congressional and Administrative News 3, 5162 (1974).

Federal courts have also placed emphasis on the comments made during the floor debate although these statements are ambiguous. Indeed, the House Floor Manager, Representative John Dent, and Chairman of the Senate Committee on Labor, Harrison Williams, Jr., both stated that the only purpose of 29 USC § 1144 was to eliminate "the threat of conflicting or inconsistent state and local regulation of employee benefit plans." 120 Congressional Record 29933 (1974); 120 Congressional Record 29917 (1974). *See, e.g., Hewlett-Packard Co. v. Barnes, supra,* 425 F Supp at 1299. Significantly there is no indication in any of the legislative history of an intent to preempt areas of state regulation which are not addressed by ERISA, nor an intent that such areas be left wholly unregulated.

■ The statute and the Conference Committee report use the term "supersede." Plaintiffs broadly interpret this term to mean that Congress has totally occupied the field of fringe benefits together with such things as apprenticeship and "other training programs." 29 USC § 1002(1). We decline to make such a broad interpretation in the absence of any legislative declaration that Congress intended to create an enormous regulatory vacuum in areas that traditionally have been matters of vital state concern. Correct usage of the term "supersede" connotes supplanting one thing with another. Webster's Third New International Dictionary, 2295-2296 (1971). Here Congress has only in small part supplanted state regulation. The substantive nature of health and welfare benefits provided by employers and employee organizations has not been

addressed by Congress. We will not presume congressional intent to preempt unless Congress "has unmistakably so ordained." *Florida Avocado Growers v. Paul, supra.* Here it has not.

Reversed.