No. 14557

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

THE MOUNTAIN STATES TELEPHONE AND
TELEGRAPH COMPANY, a Colorado
Corporation,

            Plaintiff and Respondent,

      -vs-

THE COMMISSIONER OF LABOR AND
INDUSTRY OF THE STATE OF MONTANA et al.,

            Defendants and Appellants.

Appeal from:  District Court of the First Judicial District,
              Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

    For Appellants:

        Rosemary B. Zion argued, Helena, Montana
        Clay Smith argued, Denver, Colorado
        James Gardner, Helena, Montana

    For Respondent:

        Hughes, Bennett and Cain, Helena, Montana
        John F. Sullivan argued, Helena, Montana

                          Submitted: September 19, 1979

                          Decided: OCT 22 1979

Filed:

_Thomas J. Kearney_
                              Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This litigation originated as an administrative proceeding in the state Department of Labor and Industry. The decision of the administrative hearing was adverse to Mountain States Telephone and Telegraph Company (hereinafter "Mountain Bell") and judicial review and declaratory relief were sought. The District Court of the First Judicial District, Lewis and Clark County, entered judgment for Mountain Bell remanding the parties to the administrative level where the original proceeding could be dismissed. Appellants appeal from that judgment, and Mountain Bell, as respondent, cross-appeals from certain dicta included in the District Court opinion.

Mountain Bell is a Colorado corporation engaged in interstate commerce throughout the Rocky Mountain west, including Montana. It is a signatory to a collective bargaining agreement with the Communication Workers of America (CWA), a labor union. This agreement provides that an employee may request up to one year's maternity leave but may receive no benefits during pregnancy except death benefits.

Rae Bauer, a member of CWA, was an operator for Mountain Bell in Great Falls, Montana, and had been so employed since 1973. She became pregnant in the spring of 1975. Because of a past history of gynecological problems and on the advice of her doctor, she began a leave of absence on October 15, 1975. She gave birth on January 20, 1976, but did not return to work until October 11, 1976.

Under the Mountain Bell disability benefits plan, she was clearly ineligible for compensation for the pregnancy

-2-

leave taken. The company traditionally denied disability benefits for pregnancy-related conditions.

On February 11, 1976, Rae Bauer filed a complaint under the Maternity Leave Act of the State of Montana, section 41-2601 et. seq., R.C.M. 1947, now section 39-7-201 et seq., MCA, alleging that she was entitled to certain maternity leave benefits. After an administrative hearing, it was found that the Department of Labor and Industry had jurisdiction over the matter. As a result of a second administrative hearing, the claim for benefits was dismissed. All parties excepted to the result of this hearing. The commissioner issued a decision which, in effect, said the Maternity Leave Act governed the situation and that benefits were payable. In so holding, the commissioner rejected Mountain Bell's argument that either the federal Employee Retirement Income Security Act of 1974 (ERISA) or the Labor Management Relation Act of 1947, as amended (LMRA), preempted the state law. Further, under the state act, the phrase "disabled as a result of pregnancy" meant all disabilities related to pregnancy and that pregnancy meant both pre- and post-childbirth conditions. The next day, the commissioner adopted the decision as part of the department's administrative rules.

Mountain Bell subsequently sought judicial review of the decision as well as to have the rules of the department declared invalid. On August 17, 1978, the District Court concluded that the federal laws did preempt the operation of the state law and that the state law was unenforceable against Mountain Bell. From that portion of the court's ruling, appellants appeal. By way of dicta, the District Court opinion said, for intrastate enterprises, the state

law required that benefits be paid for all pregnancy-related occurrences, whether normal or abnormal, and that the statute applied from the beginning of disability through the termination of gestation and for a reasonable time afterwards. From this portion of the opinion, Mountain Bell cross-appeals.

The following issues have been presented to this Court for review:

1.  Does either the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq., or the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §141 et seq., preempt the application of section 39-7-203(3), MCA, of the Montana Maternity Leave Act to respondent/cross-appellant, the Mountain States Telephone and Telegraph Company?

2.  Whether the above Montana statute must be construed to confer benefits for normal and abnormal pregnancy disabilities and to pre- and post-childbirth conditions?

Appellants/cross-respondents' position can be summarized as follows:

(1) The Montana Maternity Leave Act is not preempted by the Employee Retirement Income Security Act or by federal labor laws.

(2) Congress did not intend to legislate within ERISA on employment discrimination. Regulation of this field was left subject to Title VII of the Civil Rights Act of 1964. ERISA does not affect the operation of Title VII.

(3) Title VII is based upon a model of state and federal cooperation. It provides for deferral to state anti-discrimination agencies of Title VII complaints and protects state laws which do not conflict with Title VII from preemption by that Act.

(4) These provisions are part of a congressional purpose to encourage the development of state anti-discrimination laws. This purpose, which is essential to Title VII, would be impaired if ERISA were held to prohibit states from enacting anti-discrimination laws such as the Maternity Leave Act.

(5) Title VII affirmatively protects state anti-discrimination laws from preemption. Operation of local laws is an integral part of legislative scheme of Title VII.

(6) The United States Supreme Court has refused to find preemption in areas where Congress has intended to foster cooperation.

(7) The recent enactment of the Pregnancy Disability Act, a law amending Title VII, specifically overturned General Electric Co. v. Gilbert (1976), 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343, and made it clear that Congress did not preempt state pregnancy disability laws by enacting ERISA.

(8) Federal labor laws do not preempt the Montana Maternity Leave Act. Applying a balancing test, the interest of the state in providing economic protection to its women workers clearly outweighs any implied incursions into the territory occupied by NLRA/LMRA.

(9) Title VII also protects the Montana statute from preemption by federal labor law.

(10) The statutory protection afforded by Title VII and the Montana Maternity Leave Act are in the nature of an independent right and cannot be waived through collective bargaining.

(11) There is a presumption in favor of the validity of state statutes which deal with an area of traditional state concern.

(12) The Montana Maternity Leave Act clearly applies to all periods of disability occurring as a result of pregnancy, whether these periods of disability are normal or unusual, and regardless of whether they occur before or after childbirth.

Respondent/cross-appellant takes a generally contrary position.

The Equal Employment Opportunity Commission, appearing by amicus brief, argues that state fair employment laws such as section 39-7-201 et seq., MCA, are not preempted by ERISA for the reasons stated in Bucyrus-Erie Corp. v. Department of Industry, Etc. (7th Cir. 1979), 599 F.2d 205, and for the reasons stated in the briefs of appellants/cross-respondents.

## ERISA PREEMPTION OF THE MONTANA ACT

The first issue facing this Court is whether section 39-7-203(3), MCA, is preempted by the Employee Retirement Income Security Act (ERISA, P.L. 93-406, 88 Stat. 897, enacted September 2, 1974, and in particular §514 thereof, codified as 29 U.S.C. §1144 and referred to herein as §1144).

Section 39-7-203(3), MCA, of the Montana Maternity Leave Act, provides in pertinent part:

> "It shall be unlawful for an employer or his agent to:
>
> ". . .
>
> "(3) deny to the employee who is disabled as a result of pregnancy any compensation to which she is entitled as a result of the accumulation of disability or leave benefits accrued pursuant to plans maintained by her employer . . ."

The preemption provision of ERISA, 29 U.S.C. §1144(a), provides in pertinent part:

"(a) except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title . . ."

29 U.S.C. §1003(a) makes the above section applicable to any benefit plan established or maintained by any employer engaged in interstate commerce. There is no dispute that Mountain Bell is engaged in interstate commerce nor is there any dispute that Mountain Bell's employee benefit plan is covered by ERISA.

Mountain Bell argues, and the District Court held, that the federal government has clearly and unambiguously occupied the field with respect to employee health and welfare benefits and has preempted the states from in any way regulating such benefits other than by the specific exemptions provided in 29 U.S.C. §1144(b), exemptions which admittedly do not apply here.

Appellants do not agree. They contend that the Montana statute is exempted from ERISA preemption by 29 U.S.C. §1144(d), which declares, "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States . . . ", in conjunction with 42 U.S.C. §2000e-7 (section 708 in Title VII, P.L. 88-352, Civil Rights Act of 1964, 78 Stat. 262), which provides, "[n]othing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State . . ." Appellants argue that to allow preemption of the Montana Maternity Leave Act by subsection (a) of 29 U.S.C. §1144 would be to violate subsection (d) of that statute by impairing a law of the United States (the 1964 Civil Rights Act) by relieving Mountain Bell from its liability under the Montana Act.

Appellants further contend that by permitting ERISA preemption, two other sections of the Civil Rights Act would be impaired. They are 42 U.S.C. §2000e-5(c) (section 706, Title VII, P.L. 88-352, 78 Stat. 259, which provides for deferral of federal action in equal employment opportunity cases for a period of sixty days to permit the commencement of proceedings under state law) and 42 U.S.C. §2000h-4 (section 1104, Title XI, 78 Stat. 268, which provides: "[n]othing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act or any provision thereof").

In effect, appellants argue that if the Montana Act is preempted, the above sections of the Civil Rights Act will be delimited.

Although appellants' arguments found little solace in the District Court's opinion, similar arguments have found support in other jurisdictions: Goodyear Tire & Rubber v. Dept. of Industry (1978), 87 Wis.2d 56, 273 N.W.2d 786; Bucyrus-Erie Co. v. Dept. of Industry (E.D. Wisc. 1978), 453 F.Supp. 75, aff'd, (7th Cir. 1979), 599 F.2d 205; Illinois Bell Tel. Co. v. Fair Employment Practices Commission (1979), 68 Ill.App.3d 829, 25 Ill.Dec. 328, 386 N.E.2d 599; Westinghouse Elec. Corp. v. State Human Rights Appeals Board (1978), 60 A.D.2d 943, 401 N.Y.S.2d 597; Liberty Mutual Insurance Company v. State Division of Human Rights (1978), 61 A.D.2d 822, 402 N.Y.S.2d 218; Lukus v. Westinghouse Electric Corp.,

No. GD77-14803 (Ct. of Common Pleas for Allegheny County, Pa., April 20, 1978 (unpublished opinion); Time Insurance Co. v. Department of Industry, Labor and Human Relations, No. 145-423, (Ct. of Dane County, Wisc., January 3, 1978), 16 BNA FEP 391.

Although not dealing with facts similar to the instant case, a number of courts have interpreted the preemption provision in its "broadest sense." See Wadsworth v. Whaland (1st Cir. 1977), 562 F.2d 70; Standard Oil Co. of California v. Agsalud (N.D. Cal. 1977), 442 F.Supp. 695, 706-07; Bell v. Employee Security Benefit Ass'n (D. Kan. 1977), 437 F.Supp. 382, 385-88; Wayne Chemical v. Columbus Agency Service Corp. (N.D. Ind. 1977), 426 F.Supp. 316, 321, aff'd as modified, (7th Cir. 1977), 567 F.2d 692; Hewlett-Packard Co. v. Barnes (N.D. Cal. 1977), 425 F.Supp. 1294, aff'd, (9th Cir. 1978), 571 F.2d 502; Azzaro v. Harnett (S.D. N.Y. 1976), 414 F.Supp. 473, 474, aff'd, (2nd Cir. 1977), 553 F.2d 93, cert. denied, (1977), 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82; National Carriers Conf. Com. v. Heffernan (D. Conn. 1978), 454 F.Supp. 914, 918; Francis v. United Technologies Corp. (N.D. Cal. 1978), 458 F.Supp. 84. But see, Insurers Action Council, Inc. v. Heaton (D. Minn. 1976), 423 F.Supp. 921, 926.

It is interesting to note that although Wadsworth and Bell favored broad preemption by ERISA, they both held that the individual statutes before them were spared from exemption, albeit by the specific ERISA provision sparing state laws regulating insurance from preemption. Further, Wayne Chemical, while finding preemption, incorporated the state statute in question into the federal common law of employee benefit plans. Hewlett-Packard and Azzaro, on the other

hand, found broad preemption. The state laws in these two cases, however, concerned areas regulated by ERISA.

There are a number of cases on point where a state law prohibiting discrimination in the provision of disability benefits to pregnant workers is involved. While there is a split of authority, the majority of opinions to date have found no federal preemption of the state law. Gast v. State, by and through Stevenson (1978), 36 Or.App. 441, 585 P.2d 12; Goodyear Tire & Rubber v. Dept. of Industry, supra; Bucyrus-Erie Co. v. Dept. of Industry, supra; Illinois Bell Tel. Co. v. Fair Employment Practices Commission, supra; Westinghouse Elec. Corp. v. State Human Rights Appeals Board, supra; Liberty Mutual Insurance Co. v. State Division of Human Rights, supra; Lukus v. Westinghouse Electric Corp., supra; Time Insurance Co. v. DILHR, supra. Contra, State of Minnesota v. MMM Co., Department of Human Rights Decision, Minn., September 16, 1977; Pervel Industries v. State of Conn. (D. Conn. 1978), 468 F.Supp. 490; American Chain and Cable Co., Inc. v. Iowa Civil Rights Commission, CE 6-2938 (Polk District County Ct., Iowa, June 28, 1978) (unpublished opinion).

Several of the above decisions have adopted the view taken by appellants herein--that Title VII protects state statutes from preemption by ERISA.

The Federal District Court in Bucyrus-Erie, supra, analyzed the interrelationship of Title VII, ERISA, and the Wisconsin pregnancy disability law. The court found that while ERISA deals with employee benefit plans, the Wisconsin Fair Employment Act does not specifically address such private employee benefits plans: "Rather, this Act is designed to prohibit discrimination in employment and is

grounded on the state's police power. It does not impinge on federal regulation of employee benefit plans." 453 F.Supp. at 78.

The court further found that although ERISA supersedes state laws relating to employee benefit plans, it does not expressly provide that all state fair employment laws are likewise superseded:

> "The legislative history of the Act fails to indicate that Congress, by enacting ERISA, intended to preempt state fair employment laws as they may concern employee benefit plans.
>
> "Section 1144(d) does, in fact, provide that ERISA shall not be construed to alter, modify or supersede any law of the United States.
>
> "Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended, expressly preserves state laws such as the Wisconsin Fair Employment Act which are designed to prohibit employment discrimination. 42 U.S.C. §§ 2000e-7 and 2000h-4.
>
> "Title VII specifically provides that no charge may be filed with the EEOC under Title VII until sixty days after proceedings have been commenced under the state employment discrimination law, 42 U.S.C. § 2000e-5(c), 5(d) and 5(e). The EEOC must give substantial weight to state agency findings and orders and must cooperate with such agencies. 42 U.S.C. §§ 2000e-5(b), 2000e-8.
>
> "From an examination of the provisions of ERISA and its legislative history, and considering Congress' long-standing recognition of the importance of state employment discrimination laws, this Court finds that it is not clear that Congress intended to preempt the Wisconsin Fair Employment Act insofar as it prohibits sex discrimination in employee benefit plans.
>
> "Because preemption is not clearly mandated in this Court's opinion, this Court declines to invalidate the Wisconsin Fair Employment Act against a claim of federal preemption grounded on ERISA. To hold otherwise, would also seriously impair the enforcement scheme of Title VII of the Civil Rights Act of 1964." Bucyrus-Erie, 453 F.Supp. at 79.

The court in Goodyear Tire & Rubber v. Dept. of Industry, supra, used a similar rationale in concluding that the exemption contained in §1144(d) applies to Title VII of the Civil Rights Act and through Title VII to section 111.32 (5)(g) of the Wisconsin Fair Employment Act so as to preserve it from ERISA preemption:

> "There is no question but that prior to ERISA, sec. 111.32(5)(g), Stats., was consistent with Title VII which, like the Wisconsin statute, prohibited sex discrimination in employment. 42 U.S.C. sec. 2000e-2(a)(1). The Wisconsin statute therefore survived and was not preempted by Title VII. More precisely, and in the words of 42 U.S.C. sec. 2000h-4, there was no 'intent on the part of Congress to occupy the field . . . (of sex discrimination in employment) . . . to the exclusion of' Wisconsin's law on the same subject.

> "And there is no question but that Title VII survives intact the preemption provisions of ERISA by virtue of sec. 1144(d).

> "If sec. 111.32(5)(g), Stats., survived Title VII, and if the latter survives ERISA, then the logic of the federal statutes compels the conclusion that sec. 111.32(5)(g) survives ERISA." Goodyear, 273 N.W.2d at 795.

The court rejected an argument (similar to one made here by Mountain Bell) by Goodyear that:

> ". . . sec. 111.32(5)(g), Stats., survives only Title VII and is preempted as to employee benefit plans because the exemption from preemption is limited to Title VII. The argument is based upon the opening words of 42 U.S.C. §2000h-4, 'Nothing contained in any title of this Act shall be construed . . . .' as preempting state laws and, the argument continues, 'other federal statutes' may work preemption. The 'other federal statute' involved, however, is sec. 1144(d) of ERISA which tells us, in effect, that nothing in Title VII shall be construed as altered, amended, modified, invalidated, impaired or superseded by ERISA. If we are to adopt Goodyear's view of ERISA, an exception as to employee benefit plans must be found in 42 U.S.C. §2000h-4 of Title VII. That exception does not appear on the face of 42 U.S.C. §2000h-4. Such an exception would have to be based upon an implied amendment of Title VII resulting from the adoption of ERISA, and would be contrary to sec. 1144(d) of ERISA.

"Goodyear argues it would be a nonsequitur for Congress broadly to declare that state laws are preempted and then to permit the states to regulate employee benefit plans through the mechanism of a different federal statute. But the fact is that Congress declared in sec. 1144(d) of ERISA that federal laws remain unchanged after ERISA and Title VII continues to permit states to prohibit sex discrimination in employment." Goodyear, 273 N.W.2d at 795-96.

In Liberty Mutual Insurance Company v. State Division of Human Rights, supra, the court reviewed a determination by the State Human Rights Appeal Board affirming an administrative finding that an employer had discriminated against the complainant on the basis of her sex through disallowance of pregnancy-related benefits and stated:

". . . Although the Congress fashioned a broad preemptive policy when it passed ERISA (see U.S. Code, tit. 29, § 1144[a]), the legislative history behind the passage of the retirement program leads us to conclude that Congress did not intend to narrow the jurisdiction of those Federal and State agencies whose duty it is to regulate unlawful employment practices. The statements of Senator Walter Mondale and Representative Bella Abzug, made in their respective Houses of Congress, indicate that anti-discrimination amendments to the ERISA legislation were only withdrawn upon assurance from the ERISA draftsmen that discrimination claims would continue to fall within the jurisdiction of the Equal Employment Opportunity Commission under terms of existing law (see 119 Cong.Rec. S30409-10 [Sept. 19, 1973]; 120 Cong.Rec. H4726 [Feb. 28, 1974]). Thus, it is clear that Congress did not intend to disturb the established structures for administering such claims. Since title VII of the Civil Rights Act has clearly not been impaired by ERISA (see U.S. Code, tit. 29, §1144 [d]; U.S. Code, tit. 42, §2000e-7), and since it vests concurrent jurisdiction in the Equal Employment Opportunity Commission and similar State-level agencies to investigate these claims (see, e.g., U.S. Code, tit. 42, §§2000e-4[g][1], 2000e-7), we find that the jurisdiction of the State Division of Human Rights was not preempted by ERISA." Liberty Mutual, 402 N.Y.S.2d at 219.

To the same effect as the above three cases are Lukus v. Westinghouse Electric Corp., supra, and Illinois Bell Tel. Co. v. Fair Employment Practices Commission, supra.

In Gast, supra, the court reviewed the history of ERISA as well as its substantive provisions and concluded there was no broad intent to preempt substantive provisions such as the Oregon pregnancy law:

> "The subject matter of ERISA does not compel the conclusion that Congress intended to preempt states in regulating such things as pregnancy benefits. The scope of the regulatory scheme embodied in ERISA is limited, particularly with respect to health and welfare benefits. The statutory purposes enumerated in 29 U.S.C. §1001 are: (1) to require disclosure and reporting to beneficiaries; (2) to ensure that employee pension benefit programs are adequately funded; (3) to improve the equities of pension plans; and (4) to establish 'minimum standards * * * assuring * * * their finanacial soundness.'

> " . . .

> "More significantly, there is no suggestion in the statute that Congress intended to regulate the substance of health and welfare benefits or the manner in which such benefits are to be provided. Thus, if we are to adopt the construction of 29 U.S.C. §1144(a) advanced by plaintiffs we must import to Congress not only an intent to preempt state law, but also an intent to cease all governmental regulation, state or federal, other than the disclosure and fiduciary requirements of health and welfare benefits paid by employers or employee organizations. There is nothing in the legislative history suggesting such an intent. To the contrary, the legislative history indicates Congress was concerned with the inadequacy of governmental regulations and concluded that there should be at least minimum federal standards with respect to disclosure and fiduciary responsibility. See, e.g., 29 U.S.C. §1001." Gast, 585 P.2d at 20-21.

Although holding against preemption, the court, citing General Electric v. Gilbert (1976), 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 323, did not accept the argument that Title VII spared the state act from preemption.

In Time Insurance Co. v. DILHR, supra, the court also concluded that Wisconsin's pregnancy disability statute was not within the field of law preempted by ERISA. It held that the state law concerned:

". . . is a statute broad in scope grounded on
the State's police power to prevent employers
engaging in any employment practice which dis-
criminates because of sex. It in no way impinges
on federal regulation of employee benefit and
pension plans. The sex discrimination prohibi-
tions of the Wisconsin Fair Employment Law are
merely of peripheral concern of ERISA. Until the
United States Supreme Court rules to the contrary,
this Court is of the Opinion that Wisconsin courts
so long as there exists a rational doubt that
preemption exists, should uphold validity of
sec. 111.32(5)(g), Stats., against a claim of
federal preemption grounded on ERISA." 16 BNA
FEP cases at 396.

While the nonpreemption view appears to be in the

majority, not all maternity leave cases agree with the one

quoted above. In American Chain and Cable Co., Inc. v. Iowa

Civil Rights Commission, supra, the Iowa court held that

according to General Electric v. Gilbert, supra, and under

Iowa law, an employer's disability benefit plan which spe-

cifically excluded disabilities due to pregnancy did not

discriminate against women nor violate state or federal

civil rights laws. The court also summarily concluded that

ERISA had preempted the field.

Similarly, the court in Pervel Industries v. State of

Connecticut (D. Conn. 1978), 468 F.Supp. 490, rejected the

double savings clause rationale that Title VII protected

Connecticut's anti-discrimination law from preemption:

"This Court does not accept the reasoning of
this double savings clause contention. Section
514(d) of ERISA preserves federal law. Connec-
ticut's anti-discrimination law does not become
a federal law simply because Title VII preserves
its validity as against a claim of preemption
by Title VII. Nor is the textual argument sig-
nificantly enhanced by focusing on §514(b)'s
requirement that ERISA should not be construed
to 'impair' any law of the United States. Pre-
emption of Conn. Gen. Stat. §31-126(g) by ERISA
does not impair any federal law. Title VII did
not create new authority for state anti-discrim-
ination laws; it simply left them where they
were before the enactment of Title VII. What-
ever is prohibited by Title VII remains prohi-

-15-

bited under ERISA but exclusion of disability benefits for pregnancy does not violate Title VII. . ." Pervel Industries, 468 F.Supp. at 493.

As stated earlier, the nonpreemption viewpoint, as espoused by appellants, is favored by the majority of cases involving such maternity discrimination statutes. All the cases, however, rely on some, albeit varied, interpretation of how Title VII, ERISA, General Electric v. Gilbert, supra, and state laws interact.

The parties agree that "potential problems of discrimination in employee benefit plans were not intended to be dealt with by ERISA," but were intended to be dealt with by Title VII of the Civil Rights Act of 1964. This is where the agreement ends, however, with Mountain Bell contending that under General Electric v. Gilbert, supra, it was not sex discrimination within the meaning of Title VII for an employer to exclude pregnancy disability benefits from coverage under employee plans, and appellants contending that the states were permitted to regulate employee benefit plans in the area of discrimination.

Mountain Bell's position fails to take into account the rather checkered history of Gilbert, including the recent significant addition to Title VII demonstrating a contrary congressional intent, and the cases decided after Gilbert, demonstrating a consistent refusal on the part of the majority of the courts to follow Gilbert. An excellent discussion of this history is set out in Illinois Bell Tel. Co. v. Fair Employment Practices Commission, supra:

> "On October 31, 1978 section 701(k) of the Civil Rights Act of 1964 was signed into law adding a definition to the Act which demands a view of the statute from a different perspective, providing, in pertinent part:

-16-

"'The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title shall be interpreted to permit otherwise.'

"The language of section 701(k) makes clear that Congress disagreed with the interpretation placed upon the pregnancy discrimination issue by the Gilbert decision.  This inference is buttressed by the commentary set forth in the Report of the Committee on Education and Labor of the House of Representatives which stated, in part:

"'It is the Committee's view that * * * dissenting justices [Brennan, Marshal and Stevens in General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343] correctly interpreted the act. * * * We recognize that the enactment of H.R. 6075 will reflect no new legislative mandate of the Congress nor affect changes in practices, costs, or benefits beyond those intended by title VII of the Civil Rights Act.' U.S. Code Cong. & Admin. News 1978, pp. 4749, 4750.

"Even in the absence of section 701(k) of Title VII, recent cases from other jurisdictions, which were decided after the Gilbert decision by the Supreme Court and after the decision of the trial court herein, almost unanimously support the conclusion we reach.  (Massachusetts Electric Co. v. Massachusetts Comm'n Against Discrim. (Mass. 1978), 375 N.E.2d 1192; Quaker Oats Co. v. Cedar Rapids Human Rights Comm'n (Iowa 1978), 268 N.W.2d 862; Castellano v. Linden Board of Education (1978), 158 N.J.Super. 350, 386 A.2d 396; Anderson v. Upper Bucks County Area Vocational Tech. School (1977), 30 Pa.Cmwlth. 103, 373 A.2d 126.)  (Contra: Narragansett Electric Co. v. Rhode Island Comm'n for Human Rights (R.I. 1977), 374 A.2d 1022; Group Hosp., Inc. v. Dist. of Columbia Comm'n on Human Rights (D.C. 1977), 380 A.2d 170.)  Decisions by courts in other states, preceding that of the circuit court of Cook County herein, deciding contrary to its conclusion, include Brooklyn Union Gas Co. v. N. Y. State Human Rights Appeal Board (1976), 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393; Ray-O-Vac v. Wisconsin Dept. of Industry, Labor & Human Relations (1975), 70 Wis.2d 919, 236 N.W.2d 209; Cedar Rapids School Dist. v. Parr (Iowa Sup. Ct. 1975), 227 N.W.2d 486.  See also Comment, Love's Labor Lost: New Conceptions of Maternity

Leave, 7 Harv.Civ.Rights-Civ.Lib.L.Rev. 260
(1972); Johnston, Sex Discrimination and the
Supreme Court--1971-1974, 49 N.Y.S.L.Rev. 672
(1974); Comment, Pregnancy and the Constitution:
The Uniqueness Trap, 62 Calif. L.Rev. 1532 (1974);
Comment, Geduldig v. Aiello: Pregnancy Classi-
fications and the Definition of Sex Discrimina-
tion, 75 Colum.L.Rev. 441 (1975); Comment, Preg-
nancy and Employment Benefits, 27 Baylor L.Rev.
767 (1975).

"Representative of the viewpoints expressed by
the foregoing authorities is the well-reasoned
opinion in Massachusetts Electric Co. v. Massa-
chusetts Comm'n Against Discrim. (Mass. 1978),
375 N.E.2d 1192 which held (375 N.E.2d at 1198-
99):

"'In considering whether the exclusion of bene-
fits for pregnancy-related disabilities from a
comprehensive disability plan violates G.L. c.
151B, §4, the initial inquiry necessarily in-
volves determining whether distinctions based
on pregnancy are sex-linked classifications.
Pregnancy is a condition unique to women, and
the ability to become pregnant is a primary char-
acteristic of the female sex.  Thus, any classi-
fication which relies on pregnancy as the deter-
minative criterion is a distinction based on sex.
General Elec. Co. v. Gilbert, 429 U.S. 125, 149,
97 S.Ct. 401, 414, 50 L.Ed.2d 343 (1976) (Bren-
nan, J., dissenting) ("Surely it offends common
sense to suggest . . . that a classification
revolving around pregnancy is not, at the mini-
mum, strongly 'sex related'").  Id. at 161-162,
97 S.Ct. at 421 (Stevens, J., dissenting) ("By
definition . . . [placing pregnancy in a class
by itself] discriminates on account of sex; for
it is the capacity to become pregnant which pri-
marily differentiates the female from the male").
Gilbert v. General Elec. Co., 375 F.Supp. 367,
381 (E.D. Va. 1974), reversed, 429 U.S. 125, 97
S.Ct. 401, 50 L.Ed.2d 343 (1976) ("[Pregnancy]
is undisputed[ly] and inextricably sex-linked.
. . . That [exclusion of pregnancy-related dis-
abilities] is discriminatory by reason of sex
is self evident").  See Black v. School Comm.
of Malden, 365 Mass. 197, 209-211, 310 N.E.2d
330 (1974).

"'The exclusion of pregnancy-related disabilities,
a sex-based distinction, from a comprehensive
disability plan constitutes discrimination.
While men are provided comprehensive coverage
for all disabilities which will necessitate their
absence from work, including male-specific dis-
abilities, women are not provided the assurance
of comprehensive protection from the inability
to earn income during a period of disability.
* * * (Citations omitted.) Pregnancy exclusions

in disability programs "both financially burden women workers and act to break down the continuity of the employment relationship, thereby exacerbating women's comparative transient role in the labor force".  * * * (Citations omitted.) Moreover, pregnancy exclusions reflect and perpetuate the stereotype that women belong at home raising a family rather than at a job as permanent members of the work force. * * *' (Citations omitted.)

"It is also noteworthy that the decisions of the six federal courts of appeal which predate General Electric Co. v. Gilbert (1976), 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343, concordantly concluded that pregnancy exclusions violated Title VII and constituted unlawful sex discrimination.  Communications Workers v. American Telephone & Telegraph Company (2nd Cir. 1975), 513 F.2d 1024, vacated, 429 U.S. 1033, 97 S.Ct. 724, 50 L.Ed.2d 744 (1977); Wetzel v. Liberty Mutual Insurance Co. (3d Cir. 1975), 511 F.2d 199, vacated, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); Gilbert v. General Electric Co. (4th Cir. 1975), 519 F.2d 661, reversed, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); Satty v. Nashville Gas Co. (6th Cir. 1975), 522 F.2d 850, vacated in part, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977); Hutchison v. Lake Oswego School Dist. (9th Cir. 1975), 519 F.2d 961, vacated, 429 U.S. 1033, 97 S.Ct. 725, 50 L.Ed.2d 744 (1977).

"Since its decision in Gilbert, it appears that the Supreme Court has itself retreated from its position in two cases treating pregnancy-employment problems with a somewhat different outlook. (Nashville Gas Co. v. Satty (1977), 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356; City of Los Angeles, Dept. of Water v. Manhart (1977), 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657.)  Especially to be noted is the concurring opinion of Mr. Justice Blackmun in Manhart." Illinois Bell, supra, 386 N.E.2d at 601-03.

The above history indicates Congress originally intended to protect against sex discrimination in employment under Title VII.  This, coupled with the fact that the Equal Employment Opportunity Commission guideline overturned in Gilbert was still in effect when ERISA was being considered, indicates that Congress did not intend to preempt employment discrimination acts which tangentially affect employee benefit plans because it had already attempted to do so under Title VII.

Mountain Bell argues that statements made by Senators Javits and Williams, the principal architects of ERISA, concerning the impact of ERISA upon the Age Discrimination in Employment Act Amendments of 1978, P.L. 95-256, 92 Stat. 189 (1978), amending the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621-634, are entitled to substantial weight in interpreting ERISA, in that they reflect upon the legislative intent of an earlier statute through subsequently enacted legislation. Goodyear made a similar argument in Goodyear Tire & Rubber v. Dept. of Industry, supra. The court there rejected the argument, stating:

> "That senatorial colloquy occurred more than three years after ERISA was enacted. Legislative observations years after passage of the Act are not part of its legislative history. United Air Lines, Inc. v. McMann, 434 U.S. 192, 200, footnote 7, 98 S.Ct. 444, 54 L.Ed.2d 444 (1977). Our construction of ERISA is not foreclosed because members of Congress express contrary views after its passage. United States v. Philadelphia Nat. Bank, 374 U.S. 321, 384, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). The Age Discrimination in Employment Act Amendments of 1978 do not amend, clarify or attempt to clarify ERISA. Goodyear's reliance upon Red Lion Broadcasting Co. v. F.C.C., 394 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1968), is therefore misplaced, for in Red Lion the court said, 'Subsequent legislation declaring the intent[ion] of an earlier statute is entitled to great weight in statutory construction.' (394 U.S. 381, 89 S.Ct. 1801, emphasis added.)" 273 N.W.2d at 797.

It is well settled that the question of whether a state statute is invalid under the supremacy clause depends upon the intent of Congress. Malone v. White Motor Corp. (1978), 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443. It is also well settled that state statutes are presumed to be valid unless Congress clearly intended these statutes to be superseded by federal law. Jones v. Rath Packing Co. (1977), 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604; Motor Coach Employees v. Lockridge (1971), 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d

473; Florida Lime & Avocado Growers, Inc. v. Paul (1963), 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248.

As stated earlier:

"The subject matter of ERISA does not compel the conclusion that Congress intended to preempt states in regulating such things as pregnancy benefits. The scope of the regulatory scheme embodied in ERISA is limited, particularly with respect to health and welfare benefits. The statutory purposes enumerated in 29 U.S.C. §1001 are: (1) to require disclosure and reporting to beneficiaries; (2) to ensure that employee pension benefit programs are adequately funded; (3) to improve the equities of pension plans; and (4) to establish 'minimum standards * * * assuring * * * their financial soundness.'" Gast, 585 P.2d at 20.

There is nothing in ERISA which treats the area of employment discrimination. The problem arises because we are dealing with two statutes--one state and one federal--that seek to regulate separate activities although some overlapping areas exist between them. While ERISA supersedes state laws relating to employee benefit plans, it does not expressly supersede all state fair employment laws, nor does it mention them. Indeed, given the history of Title VII, it would have been illogical if it had.

". . . Here, we have a federal regulatory scheme which regulates a limited area coupled with an express declaration which, if broadly interpreted, preempts states from a multitude of other areas which heretofore have been recognized as valid state concerns. . ." Gast, 585 P.2d at 22.

To hold for preemption would be to create an enormous vacuum in areas that have heretofore been traditionally dealt with by the states through the liberal intent of Title VII. The substantive nature of health and welfare benefits are not addressed by ERISA. We should not presume congressional intent to preempt unless Congress "has unmistakably so ordained." Florida Lime & Avocado Growers, Inc. v. Paul, supra, 373 U.S. at 142.

## NATIONAL LABOR RELATIONS ACT PREEMPTION

The District Court declined to rule on this issue, noting: "Consideration of whether federal labor law preempts the Maternity Leave Act by implication is unnecessary in view of the much clearer preemptive declaration of ERISA. At any rate, I reach that conclusion and therefore will not attempt an analysis of federal labor law to determine whether or not it preempts our Maternity Leave Act."

As there was no ruling concerning the effect of federal labor law by the District Court, this issue is technically not before us. The parties, however, have spent substantial portions of their briefs discussing this issue, and in view of our decision concerning ERISA, it becomes necessary to discuss this issue as well.

During the relevant time period of this lawsuit, the employment relationship between Mountain Bell and Rae Bauer was governed by a collective bargaining agreement between Mountain Bell and Rae Bauer's labor union, Communications Workers of America. This collective bargaining agreement was entered into under and subject to the provisions of federal labor law. Generally, federal labor law does not specify what the substantive terms of collective bargaining agreements must be. Instead, federal labor law requires that employers and unions must bargain in good faith that they may work out for themselves their own agreements for the governance of their industrial relations. See 29 U.S.C. §158(d).

Mountain Bell contends that federal labor law requires as a "mandatory subject of bargaining" that employers and unions come to some agreement on employer group insurance, including insurance for nonoccupational injuries or disease.

W. W. Cross & Co. v. NLRB (1st Cir. 1949), 174 F.2d 875, 878. Here, this mandatory collective bargaining between Mountain Bell and CWA resulted in an agreement which states that Mountain Bell is not required to pay disability benefits when an employee is on a maternity leave of absence.

Mountain Bell further contends that the attempt by the Commission of Labor and Industry to compel Mountain Bell to pay such benefits under section 39-7-203, MCA, alters the collective bargaining agreement and violates the fundamental premise of federal labor law: that the terms and conditions of employment must be established by the collective bargaining which are not subject to being changed or altered by the application of contrary state laws.

Appellants, on the other hand, reiterate that the Maternity Leave Act has been affirmatively authorized by Title VII. Further, they argue that such statutory protection against certain forms of employment discrimination is in the nature of an independent right and cannot be waived through collective bargaining.

The court in Goodyear Tire & Rubber v. Dept. of Industry, supra, faced a similar issue. Goodyear's disability plan was negotiated subject to the NLRA. The effect of the department of industry's order there was to invalidate a provision in the plan which excluded pregnancy disabilities from full benefits.

The department's order, therefore, altered Goodyear's collective bargaining agreement. The court cited extensively from Malone v. White Motor Corp. (1978), 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443, and found that under Malone it had to look at federal labor law to determine whether state law had been preempted. The court did so and

held ". . . we find an express statement in Title VII, 29 U.S.C. sec. 2000h-4, that there was no 'intent on the part of Congress to occupy the field . . .' of sex discrimination in employment to the exclusion of state laws on the same subject matter." 273 N.W.2d at 798.

In Malone the issue was whether a Minnesota pension statute was preempted prior to the enactment of ERISA by federal labor policy insofar as it purported to override or control the terms of collective bargaining agreements negotiated under the NLRA. The court stated:

"It is uncontested that whether the Minnesota statute is invalid under the Supremacy Clause depends on the intent of Congress. 'The purpose of Congress is the ultimate touchstone.' Retail Clerks v. Schermerhorn, 375 U.S. 96, 103 (1963). Often Congress does not clearly state in its legislation whether it intends to preempt state laws; and in such instances, the courts normally sustain local regulation of the same subject matter unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States. Ray v. Atlantic Richfield Co., ante, at 157-158; Jones v. Rath Packing Co., 430 U.S. 519, 525, 540-541 (1977); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). 'We cannot declare pre-empted all local regulation that touches or concerns in any way the complex interrelationships between employees, employers and unions; obviously, much of this is left to the States.' Motor Coach Employees v. Lockridge, 403 U.S. 274 (1971). The Pension Act 'leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible.' Garner v. Teamsters, 346 U.S. 485, 488 (1953). Here, the Court of Appeals concluded that the Minnesota statute was invalid because it trenched on what the court considered to be subjects that Congress had committed for determination to the collective-bargaining process.

"There is little doubt that under the federal statutes governing labor-management relations, an employer must bargain about wages, hours, and working conditions and that pension benefits are proper subjects of compulsory bargaining. But there is nothing in the NLRA, including

-24-

those sections on which appellee relies, which expressly forecloses all state regulatory power with respect to those issues, such as pension plans, that may be the subject of collective bargaining. If the Pension Act is pre-empted here, the congressional intent to do so must be implied from the relevant provisions of the labor statutes. . ." Malone, 435 U.S. at 504-505. (Emphasis supplied.)

The court found no such implication and, on the contrary, found an intent in the Welfare and Pension Plans Disclosure Act of 1958 to preserve state authority to regulate pension plans. Likewise, the court in Goodyear found an intent to preserve state authority to regulate sex discrimination. 273 N.W.2d at 798.

In San Diego Building Trades Council v. Garmon (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, the court stated:

". . . When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting. However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. [Citations omitted.] Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U.S. at 243-44.

Mountain Bell argues that rather than weighing and balancing state and federal interests, which the Garmon opinion prescribes, the federal courts have evolved a comparatively heavy-handed doctrine of preemption which applies whenever a state law has any effect whatsoever on any aspect of labor relations or any element of a collective bargaining agreement.

Mountain Bell relies on Local 24 of the International Brotherhood of Teamsters v. Oliver (1959), 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312, and Lodge 76, Machinists v. Wisconsin Employment Relations Commission (1976), 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396, to support its position that the federal policy under the NLRA is to preempt state attempts to alter or change the substantive terms of collective bargaining. "Our decisions . . . have made it abundantly clear that state attempts to influence the substantive terms of collective-bargaining agreements are as inconsistent with the federal regulatory scheme as are such attempts by the NLRB. . ." Lodge 76, 427 U.S. at 153.

Both of the above cases dealt with areas substantively covered by NLRA: Oliver with wages and working conditions, and Lodge 76 with economic weapons of collective bargaining. Intent to preempt state action in such areas is readily recognizable. The instant case, however, does not deal with an area specifically covered by the NLRA but rather with an area of peripheral concern. To use a broad-sword approach to preemption in this area would be to forget the Supreme Court's own words:

> ". . . Federal labor policy as reflected in the National Labor Relations Act . . . has been construed not to preclude the States from regulating aspects of labor relations that involve 'conduct touch[ing] interests so deeply rooted in local feeling and responsibility that . . . we could not infer that Congress had deprived the States of the power to act.' . . . the federal law governing labor relations does not withdraw 'from the states . . . power to regulate where the activity regulated [is] a merely peripheral concern of the Labor Management Relations Act.' . . . Cases that have held state authority to be pre-empted by federal law tend to fall into one of two categories: (1) those that reflect the concern that 'one forum would enjoin, as illegal, conduct which the other forum would find legal' and (2) those that reflect the concern 'that the [application

of state law by] state courts would restrict the exercise of rights guaranteed by the Federal Acts.'" Lodge 76, 427 U.S. at 136-38. (Omitting cases.)

Clearly, this case does not fall in either of these traditional areas of preemption but is in an area of traditional local concern which only peripherally affects the collective bargaining process. Goodyear, supra.

Alexander v. Gardner-Denver Company (1974), 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147, holds that an individual's rights to equal employment opportunities under Title VII ". . . form no part of the collective bargaining process . . ." 415 U.S. at 51.

> ". . . Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination . . ." Alexander, 415 U.S. at 48-49.

Mountain Bell argues the Maternity Leave Act does not create the kind of personal and individual right found in Alexander because "the rights sought to be vindicated [in Alexander] were substantially protected by Title VII, whereas with respect to pregnancy disability benefits the Supreme Court has held that a denial thereof is not sex discrimination within the meaning of Title VII." This argument, however, ignores the fact that Title VII affirmatively protects and encourages state anti-employment discrimination legislation, as discussed herein, supra.

The rights accorded under section 39-7-203, MCA, are uniquely personal and may not be waived through the collective bargaining process. Alexander v. Gardner-Denver, supra.

"If Title VII rights to equal employment oppor-
tunities are non-negotiable in collective bar-
gaining, and if those rights are in addition to
rights granted by state law, it is unlikely that
Congress intended that the latter may be bar-
gained away even though Title VII rights may not.
And if the individual's rights to equal oppor-
tunities are greater under state than federal law,
it is unlikely that Congress intended that rights
obtained from the state may be bargained away
even though federal rights may not." Goodyear,
273 N.W.2d at 800.

We therefore conclude that section 39-7-203, MCA, is not

preempted by the National Labor Relations Act.


WHETHER THE MONTANA MATERNITY LEAVE ACT CONFERS BENEFITS
FOR NORMAL AND ABNORMAL PREGNANCY DISABILITIES AND TO PRE-
AND POST-CHILDBIRTH CONDITIONS.

Mountain Bell contends that section 39-7-203, MCA,

should be limited to abnormal or unexpected complications of

pregnancy.  The District Court rejected this argument because

the language of the statute and its legislative history do

not expressly limit coverage to abnormal or involuntary

complications.  Mountain Bell, however, submits that the

absence of such an express limitation is perfectly understand-

able in light of the fact that pregnancy is a largely volun-

tary condition, and, as such, the work absences associated

with its normal and usual progression are not the types of

disability usually covered by sick leave plans, which are

primarily intended to compensate employees for unexpected

illnesses and accidents.

Mountain Bells continues that given the fact that

pregnancy is not the typical covered disease or disability,

one would expect that if the legislature had intended cover-

age of the normal usual and voluntary assumed consequences

thereof, it would have said so expressly; however, the

statute itself is silent on this issue and there is nothing

-28-

in the legislative history which affirmatively indicates an intent to require sick leave coverage for pregnancy-related problems which are normal, natural, expected and voluntarily assumed. Mountain Bell submits that the legislature's silence on this issue can lead only to the conclusion that it intended that the phrase "disabled as a result of pregnancy" be interpreted in accordance with the usual policy of sick leave plans to compensate for unexpected wage loss. In the case of pregnancy, this would mean that compensation is required under section 39-7-203, MCA, only in cases of disabilities resulting from abnormal and unexpected complications of pregnancy.

Appellants contend that such a narrow interpretation of section 39-7-203(3), MCA, would be contrary to the plain meaning of the section and would totally defeat the purpose of the legislature in enacting the section. Appellants further contend that the Senate had a proposed limitation, similar to the one espoused by Mountain Bell, which was rejected in a conference committee of the House and Senate. They further argue that the Maternity Leave Act was based on a Connecticut statute which, while weaker in many respects and more restricted than its Montana descendant, has still been interpreted to apply to disabilities which result from both normal and abnormal pregnancies and to disabilities which occur both before and after childbirth.

The analysis of Judge Bennett in his opinion in the District Court was decisive on this point:

> "In construing a statute, words are to be given their natural, plain and obvious meaning. [Citations omitted.] In construing legislative intent, statutes must be read and considered in their entirety--the statute as a whole must be considered. U.S. v. Fort Belknap, 197 F.Supp.

812 (Mont). In reading the maternity leave law as a whole, the purpose of the statute seems obvious: when employed women become pregnant, they cannot be denied maternity leave if they are eligible at all for disability benefits. They are entitled to those benefits until they are physically able to go back to work. There is nothing in the statute to even suggest that benefits should be allowed only if the disabilities are involuntary or result from abnormal complications. The term 'disability' means 'lack of physical capacity; the inability to pursue an occupation or perform services for wages because of physical . . . impairment.' Websters Third International Dictionary. When interpreting a statute adopted from another state, the latter state's interpretation can be used to clarify the statute adopted in this state. Linley v. Davis 6 M 687 (1887); Coburn v. Coburn 89 M 386 (1931). Our maternity leave law was based on a Connecticut statute (Legis. history; Minutes of Meeting January 10, 1975). The Connecticut statute has been interpreted by that state's Commissioner of Human Rights and Opportunities to include disabilities resulting from normal and abnormal pregnancies, and to extend from conception through delivery and a reasonable period of recovery. Lagana, et al v. Middletown Board of Ed. 1976. The legislative history reveals no intention to limit the statute to abnormal complications. Therefore the statute must be construed to cover disabilities resulting from normal and abnormal pregnancies. The statute does not purport to define pregnancy itself as a disability, but recognizes that the condition of pregnancy manifests itself in ways that disable the woman for a period of time. In determining the scope of the time period to be covered by the benefits, there seems to be no logical reason why maternity benefits should be treated any differently from other disabilities where benefits are allowed for a reasonable period of recovery. The plaintiff in the instant case apparently believes that babies are delivered by the stork and are not a natural consequence of pregnancy. The statute specifically states 'disabled as a result of pregnancy.' 'Pregnancy' by definition is a condition that begins with conception and ends with delivery (Blacks Law Dictionary; Stedman's Medical Dictionary, 20th ed.). 'Result' is that which arises as a consequence of something (Blacks Law Dictionary). Childbirth is an obvious natural consequence of pregnancy and thus the statute intends to cover disabilities of childbirth.

"I conclude therefore that the term 'disability as a result of pregnancy', as used in the Montana maternity leave law applies to disabilities resulting from normal as well as abnormal pregnan-

cies, and the period of coverage extends from the onset of actual disability through termination of gestation and a reasonable period of recovery, to be determined by competent medical authority."

The judgment of the District Court is reversed on Issue No. 1, relating to preemption of section 39-7-203(3), MCA, by the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq.

Additionally, on the question of preemption of section 39-7-203(3), MCA, by the federal labor law (National Labor Relations Act, 29 U.S.C. §141 et seq.), on which the District Court was not required to rule because of the nature of its opinion, we hold that the NLRA does not preempt the Montana Act.

The judgment of the District Court is affirmed on Issue No. 3 on its finding that the term "disability as a result of pregnancy" as used in the Montana Maternity Leave Act applies to disabilities resulting from normal as well as abnormal pregnancies and the period of coverage extends from onset of actual disability through termination of gestation and a reasonable period of recovery, to be determined by competent medical authority.

The case is remanded to the District Court to enter judgment in behalf of appellants/cross-respondents: the Commissioner of Labor and Industry of the State of Montana, the Administrator of the Labor Standards Division of the Department of Labor and Industry of the State of Montana, Rae S. Bauer, Communications Workers of America, and the Montana Human Rights Commission, in conformity with this Opinion.

_____
Justice

We concur:

_____
        Chief Justice

_____

_____

_____
    Justices